# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2015 Term**

**FILED**

**April 23, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0637

**JAMES R. FLEET, JAMILA J. FLEET, AND JAMES LAMPLEY,**
**Defendants Below, Petitioners**

**V.**

**WEBBER SPRINGS OWNERS ASSOCIATION, INC.,**
**Plaintiff Below, Respondent**

---

**Appeal from the Circuit Court of Berkeley County**
**Honorable John C. Yoder, Judge**
**Civil Action No. 11-C-1091**
**AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED**

---

**Submitted: April 7, 2015**
**Filed: April 23, 2015**

Stephen G. Skinner
Anthony J. Delligatti
Skinner Law Firm
Charles Town, West Virginia
Attorneys for the Petitioners

Christopher J. Regan
Jason E. Causey
Bordas & Bordas, PLLC
Wheeling, West Virginia

Susan R. Snowden
Jason S. Murphy
Martin & Seibert, L.C.
Martinsburg, West Virginia
Tammy Mitchell McWilliams
Trump & Trump, L.C.
Martinsburg, West Virginia
Attorneys for the Respondent

**Anthony J. Majestro**
**Powell & Majestro, PLLC**
**Charleston, West Virginia**
**Attorneys for Amicus Curiae,**
**West Virginia Association for Justice**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE BENJAMIN dissents and reserves the right to file a dissenting opinion.**

**JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      Pursuant to W. Va. Code § 38-16-202(a) (1999) (Repl. Vol. 2011) and W. Va. Code § 38-16-201 (1999) (Repl. Vol. 2011), which must be read and applied together, *consensual* common law liens against real property are valid and enforceable in West Virginia.

2.      Homeowners association assessments that are to be used for improving and/or maintaining common areas of a planned community, including, but not limited to, maintaining common roads and common recreational areas within the community, are an obligation primarily for personal, family, or household purposes, and, therefore, such assessments are "claims" pursuant to W. Va. Code § 46A-2-122(b) (1996) (Repl. Vol. 2006).

**Davis, Justice:**

This case involves a dispute between a homeowners association that is a West Virginia Limited Expense Planned Community under W. Va. Code § 36B-1-203 (1994) (Repl. Vol. 2011) and certain homeowners who have failed to pay their association assessments. The parties disagree over the ability of a West Virginia Limited Expense Planned Community to assert a common law lien on real property for unpaid association assessments, attorney's fees, and costs. In addition, we are asked to decide whether an association's attempts to collect delinquent assessments are governed by the West Virginia Consumer Credit and Protection Act. The homeowners herein appeal the circuit court's grant of summary judgment resolving these issues in favor of the homeowners association. We conclude that W. Va. Code § 38-16-202(a) (1999) (Repl. Vol. 2011) and W. Va. Code § 38-16-201 (1999) (Repl. Vol. 2011) authorize a consensual common law lien against real property and that the unfair debt collection provisions of the West Virginia Consumer Credit and Protection Act do apply to a homeowners association's attempts to collect delinquent assessments. Accordingly, we affirm, in part; reverse, in part; and remand this case for further proceedings consistent with this opinion.[1]

---

[1]This Court acknowledges the appearance of the West Virginia Association for Justice as Amicus Curiae in support of the homeowners' position that the West Virginia Consumer Credit and Protection Act applies in this case. We appreciate the appearance of Amicus Curiae and will consider its arguments in conjunction with those of the homeowners.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Webber Springs Owners Association, Inc. ("Webber Springs"), plaintiff below

and respondent herein, has elected to be a West Virginia Limited Expense Liability Planned

Community ("LELPC"). In November 2003, the developer and declarant[2] of Webber

Springs recorded in the Berkeley County, West Virginia, land records, its declaration[3] of

conditions, covenants, restrictions, and easements for the planned community. Because

Webber Springs declared itself to be an LELPC pursuant to W. Va. Code § 36B-1-203,[4] it

---

[2]Pursuant to W. Va. Code § 36B-1-103(12) (1998) (Repl. Vol. 2011), "'[d]eclarant' means any person or group of persons acting in concert who: (i) As part of a common promotional plan, offers to dispose of his or its interest in a unit not previously disposed of; or (ii) reserves or succeeds to any special declarant right." The term "unit" is defined, in part, as "a physical portion of the common interest community designated for separate ownership or occupancy, the boundaries of which are described pursuant to subdivision (5), subsection (a), section one hundred five [§ 36B-2-105], article two of this chapter." W. Va. Code § 36B-1-103(33).

[3]Pursuant to W. Va. Code § 36B-1-103(13), the term "declaration" means "instruments, however denominated, that create a common interest community, including any amendments to those instruments."

[4]W. Va. Code § 36B-1-203 (1994) (Repl. Vol. 2011) states:

> If a planned community:
> (1) Contains no more than twelve units and is not subject
> to any development rights; or
> (2) Provides, in its declaration, that the annual average
> common expense liability of all units restricted to residential
> purposes, exclusive of optional user fees and any insurance
> premiums paid by the association, may not exceed three hundred
> dollars as adjusted pursuant to section 1-114 [§ 36B-1-114]

(continued...)

is exempt from all but a few specified provisions of the Uniform Common Interest Ownership Act, and its assessments[5] are capped in accordance with W. Va. Code § 36B-1-203. The declaration recorded by Webber Springs provides that delinquent unpaid assessments are both liens against the real estate and the personal obligation of the owner.

The parties do not dispute that Webber Springs has the right to assess and collect certain fees and homeowners association assessments. Rather, the instant conflict revolves around Webber Springs ability to place a lien on the real property of Webber Springs homeowners whose dues are delinquent.

Mr. James Lampley ("Mr. Lampley") acquired title to real property within Webber Springs by deed dated February 25, 2005. The deed expressly provides that the conveyance is subject to "all those reservations, restrictions, easements and other matters of record . . . ." Similarly, James R. Fleet and Jamila J. Fleet ("the Fleets") acquired title to real

---

[4](...continued)
(adjustment of dollar amounts) it is subject only to sections 1-105 [§ 36B-1-105] (separate titles and taxation), 1-106 [36B-1-106] (applicability of local ordinances, regulations and building codes) and 1-107 [36B-1-107] (eminent domain), unless the declaration provides that this entire chapter is applicable.

[5]By the term "assessments," we refer to "common expense liability," which "means the liability for common expenses allocated to each unit" of a planned community. W. Va. Code § 36B-1-103(6).

property within Webber Springs by deed dated May 6, 2005. Their deed expressly provides that the conveyance is subject to "all rights, ways, utility line easements and restrictive covenants of record." In addition, Mr. Lampley and the Fleets signed a document titled "Planned Unity Development Rider" in which they agreed to promptly pay, when due, all homeowners' dues and assessments. Mr. Lampley and the Fleets (collectively, "the Homeowners") are the defendants below and petitioners herein.

It is undisputed that Mr. Lampley failed to pay his annual homeowners assessments for the years 2007 through 2011. Likewise, it is undisputed that the Fleets failed to pay their annual homeowners assessments for the years 2006 through 2011. As a consequence, Webber Springs recorded, in the Berkeley County Clerk's office, "notices of liens" purporting to create liens for the unpaid assessments, attorney's fees, and costs, on the real property owned by the Homeowners.[6]

On January 3, 2012, Webber Springs filed separate complaints against the Homeowners. The Homeowners responded by filing separate answers and counterclaims against Webber Springs asserting violations of the West Virginia Consumer Credit and

_____

[6]On February 27, 2008, and January 8, 2010, Webber Springs recorded notices of liens against the Fleet property. On March 10, 2008, and January 8, 2010, Webber Springs recorded notices of liens against Mr. Lampley's property.

4

Protection Act. The Homeowners then filed a combined motion to file an amended answer to include class action claims[7] and to consolidate their cases. The circuit court granted the Homeowners' motion to consolidate their cases.

Thereafter, Webber Springs moved for summary judgment on the counterclaims asserted by the Homeowners. By order entered April 25, 2014, the Circuit Court of Berkeley County granted partial summary judgment in favor of Webber Springs as to all of the Homeowners' counterclaims. This appeal followed.

## II.

## STANDARD OF REVIEW

The instant matter is before this Court on appeal from an order granting partial summary judgment in favor of Webber Springs.[8] Accordingly, our review is *de novo*. "A

---

[7]The Homeowners assert that, since 2003, Webber Springs has filed at least one hundred eleven notices of liens against homeowners in Berkeley County and, in many instances, has recorded judgments pursuant to the purported liens. By order entered May 1, 2014, the circuit court denied the Homeowners' motion to certify a class action. The circuit court explained that its order granting summary judgment in favor of Webber Springs rendered the motion moot.

[8]As a preliminary matter, we note that Webber Springs has complained that the circuit court's order granting partial summary judgment in its favor is interlocutory, and, because the order fails to expressly include language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure, this appeal violates the rule of finality. *See Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 522, 745 S.E.2d 556, 560 (2013) ("Typically, interlocutory orders are not subject to this Court's appellate jurisdiction."); *Coleman v.*

(continued...)

circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our *de novo* review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Finally, to the extent that our resolution of this matter requires us to consider statutory provisions, our review is likewise *de novo*. "Where the issue on an appeal from the circuit court is clearly a question of law or involving

---

[8](...continued)
*Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995) ("The usual prerequisite for our appellate jurisdiction is a final judgment, final in respect that it ends the case."). *See also* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 54(b), at 1157 (4th ed. 2012) ("As a general matter, to have Rule 54(b) invoked a trial court must make an express determination that there is no just reason for delay and make an express direction for entry of judgment." (footnote omitted)). Notably, however, this Court has held that "[t]he key to determining if an order is final is not whether the language from Rule 54(b) of the West Virginia Rules of Civil Procedure is included in the order, but is whether the order approximates a final order in its nature and effect. . . ." Syl. pt. 1, in part, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) (internal citation omitted). *See also* Syl. pt. 4, *Riffe v. Armstrong*, 197 W. Va. 626, 477 S.E.2d 535 (1996) ("Whether an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, which does not contain the express determinations set forth in Rule 54(b) of the West Virginia Rules of Civil Procedure, was intended to be final and is therefore appealable before the entire action is terminated will be determined by this Court from all the circumstances and the terms of the order. The better practice for the circuit courts to follow is to expressly state or negate their intentions with respect to the finality of such an order within the body of the order."). In this case, the circuit court's partial summary judgment order dismissed all of the Homeowners' counterclaims against Webber Springs with prejudice. Accordingly, as to those claims, we find the order "approximates a final order in its nature and effect. . . ." Syl. pt. 1, in part, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516.

an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Applying the foregoing standards, we proceed to address the issues raised.

## III.

## DISCUSSION

Two issues are raised in this appeal. First, the Homeowners assert that the circuit court erred by concluding that Webber Springs had valid common law liens against the Homeowners' real property. Second, the Homeowners argue that the circuit court erred by concluding that a homeowners associations' attempts to collect assessments are not subject to the West Virginia Consumer Credit and Protection Act. We address each of these issues in turn.

### A. Validity of Webber Springs' Liens

The Homeowners argue that the liens asserted by Webber Springs are invalid and unenforceable pursuant to W. Va. Code § 38-16-202(a). In this regard, the Homeowners contend that the circuit court erred by failing to interpret W. Va. Code § 38-16-202(a) as completely barring common law liens against real property, regardless of whether such liens are consensual. Webber Springs, on the other hand, contends that the Homeowners have misconstrued the statute. We agree.

7

Prior to examining the relevant statutes, we pause to note that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). *See also* Syl. pt. 1, *Pond Creek Pocahontas Co. v. Alexander*, 137 W. Va. 864, 74 S.E.2d 590 (1953) ("The basic and cardinal principle, governing the interpretation and application of a statute, is that the Court should ascertain the intent of the Legislature at the time the statute was enacted, and in the light of the circumstances prevailing at the time of the enactment."). However, this Court's authority to construe a statute is confined to only those statutes that contain an ambiguity. "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). *See also* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *Pond Creek Pocahontas Co. v. Alexander*, 137 W. Va. 864, 74 S.E.2d 590 ("Where the meaning of a statute is clear and its provisions are unambiguous, this Court will not undertake to construe and interpret it, but will apply the statute as its exact terms require."); Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision

8

which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Pursuant to the plain language of W. Va. Code § 38-16-202(a), "[a] common law lien against real property is invalid and is not recognized or enforceable in this state." However, the foregoing statute may not be read in isolation. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361. *See also* Syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent."). Thus, W. Va. Code § 38-16-202(a) must be read and applied along with an accompanying statute contained within Article 16 of Chapter 38 providing that,

> [R]*egardless of whether such liens may also be considered to be common law liens, nothing in this article is intended to affect*:
> (1) Statutory liens arising under an enactment of the Legislature;
> (2) Equitable liens, constructive liens and other liens that are imposed by a court of competent jurisdiction; or
> (3) *Consensual liens now or hereafter recognized under the common law of this state*.

W. Va. Code § 38-16-201 (emphasis added). The plain language of W. Va. Code § 38-16-201(3) declares that, "[r]egardless of whether such liens may also be considered to be *common law liens*," there is "*nothing*" in article 16 that is intended to affect "[*c*]*onsensual* liens now or hereafter recognized under the common law of this state." (Emphasis added). Reading the proscription of common law liens against real property contained in W. Va. Code § 38-16-202(a) in light of the plainly worded provision of W. Va. Code § 38-16-201(3), it is irrefutable that W. Va. Code § 38-16-202(a) was not intended by the Legislature to affect *consensual* common law liens.

This conclusion is in line with a recent memorandum decision handed down by this Court in which we found that a homeowners association's lien for unpaid assessments was valid because it was consensual:

> With regard to respondent association's liens, the circuit court found that they were valid because *petitioner's deeds showed that he had consented to be bound by the Declaration*. Both deeds state that petitioner's property interests were granted "subject to and together with any and all covenants, conditions, agreements, easements, rights, rights-of-way and/or restrictions of record and in existence, including those of record in the aforesaid Clerk's Office in Deed Book No. 152, at page 862." Therefore, *this Court finds that the circuit court correctly determined that the liens were valid consensual liens*.

*In re Purported Lien or Claim Against DeBlasio*, No. 13-1306, 2014 WL 4289334, at *4

10

(W. Va. Aug. 29, 2014) (mem. decision) (footnote omitted) (emphasis added).[9]

Based upon our analysis of the relevant statutes, we now expressly hold that, pursuant to W. Va. Code § 38-16-202(a) (1999) (Repl. Vol. 2011) and W. Va. Code § 38-16-201 (1999) (Repl. Vol. 2011), which must be read and applied together, *consensual* common law liens against real property are valid and enforceable in West Virginia.

In the instant case, the circuit court found that the liens at issue are consensual common law liens. Utilizing reasoning similar to that expressed by this Court in *DeBlasio*, the circuit court concluded that the Homeowners' deeds conveyed property subject to the "Declaration of Conditions, Covenants, Restrictions and Easements" recorded by Webber Springs and, therefore, provided the requisite consent for a valid common law lien.[10]

---

[9]The memorandum decision in *DeBlasio* does not identify what type of common interest community was involved in that case. The Homeowners state in their petition to this Court, however, that the community that placed the lien challenged in *DeBlasio* is, like Webber Springs, a limited expense liability planned community.

[10]The declaration contained the following provisions in Article X:

> 1. Creation of the Lien and Personal Obligation of Assessments: . . . The annual, special and default assessments, together with such interest thereon, and costs of collection thereof as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the property against which each such interest thereon and cost of collection thereof as hereinafter provided, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment

(continued...)

11

The Homeowners contend that the liens at issue are not consensual because the Homeowners never granted consent through an authenticated document and never signed any deed. In this regard, the Homeowners point out that the deeds are from, and signed only by, the grantor of the property. We reject this argument. The deed conveying real property to the Fleets expressly provided that the conveyance was subject to "all rights, ways, utility line easements and *restrictive covenants of record.*" (Emphasis added). Similarly, the deed

---

[10](...continued)
fell due.

. . . .

9.      Effect of Non-Payment of Assessment; The Personal Obligation of Owner; the Lien; Remedies of the Association: If the assessments are not paid on the date when due . . ., then such assessment shall become delinquent and shall, together with such interest thereon and the cost of collection thereof, as hereinafter provided, thereupon become a continuing lien on the property which shall bind such property in the hands of the then Owner, his heirs, devisees, personal representative, successors and assigns.

If the assessment is not paid within thirty (30) days after the delinquency date, the assessment shall bear interest from the date of delinquency at the maximum rate permitted by law and the Association may bring an action at law against the Owner personally obligated to pay the same or to foreclose the lien against the property, and there shall be added to the amount of such assessment the costs of preparing, filing and prosecuting the complaint in such action (including reasonable attorney's fees), and in the event a judgment is obtained, such judgment shall include interest on the assessments as above provided together with costs of the action (including reasonable attorney's fees).

conveying property to Mr. Lampley contained a provision expressly making the conveyance subject to "all those reservations, *restrictions,* easements and *other matters of record* in the aforesaid Clerk's Office . . . ."[11] Thus, the restrictive covenants were incorporated into the deeds that were accepted by the Homeowners. By accepting the conveyance, the Homeowners necessarily are bound by the covenants and restrictions contained therein, even though they did not, themselves, sign the deeds. In this regard, it has been observed that

> the burden of a covenant stated in a deed falls upon a grantee who accepts the deed even though the grantee did not sign the document. The acceptance of a deed containing a covenant amounts to the adoption of the signature of the grantor as that of the grantee. Acceptance of the deed is also deemed to imply a promise on the part of the grantee to perform the covenants to be performed on his or her part.

20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 4 (2015) (footnotes omitted). *See, e.g.*, Syl. pt. 1, in part, *Richardson v. Hardman*, 97 W. Va. 573, 125 S.E. 442 (1924) ("A deed poll, after acceptance by the grantee, becomes the mutual act of the parties[.]").[12] *See*

---

[11]References to where the restrictions and other matters of record are recorded in the County Deed Books are included in Mr. Lampley's deed.

[12]A deed poll is "a deed executed by the grantor only." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 4 (2015). *See also Brendonwood Common v. Franklin*, 403 N.E.2d 1136, 1141 (Ind. Ct. App. 1980) ("The acceptance of a deed poll (a deed signed only by the grantor) satisfies the Statute of Frauds and imposes the undertakings in the deed upon the grantee. Thus, . . . a covenant (to erect a fence) contained in a deed accepted by the grantee satisfies the Statute of Frauds and ran with the land to bind subsequent grantees."); Charles B. Sheppard, *Land Use Covenants: A Summary of Aspects of California Law Regarding Land Use Covenants with Comparisons to the Restatement (Third) of Property*, 37 W. St. U. L. Rev. 27, 33-34 (2009) ("Regardless of whether a deed is a quitclaim deed, a general warranty deed, or a form of special warranty deed (for example,

(continued...)

13

*also Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997) ("By paying the purchase price and accepting title to their home, the Riters became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association."); *Citizens for Covenant Compliance v. Anderson*, 12 Cal. 4th 345, 363, 906 P.2d 1314, 1325 (1995) (explaining that "if the restrictions are recorded before the sale, the later purchaser is deemed to agree to them. The purchase of property knowing of the restrictions evinces the buyer's intent to accept their burdens and benefits."); *Johnston v. Michigan Consol. Gas Co.*, 337 Mich. 572, 579, 60 N.W.2d 464, 468 (1953) (recognizing that "the acceptance by the grantee of a deed poll signed and sealed by the grantor containing covenants to be performed by the grantee binds the latter to the performance of these covenants as effectually as if he had executed the instrument" (quotations and citation omitted)); *Warrender v. Gull Harbor Yacht Club, Inc.*, 747 S.E.2d 592, 600 (N.C. Ct. App. 2013) (observing that "restrictive covenants are contractual in nature, and that acceptance of a valid deed incorporating covenants implies the existence of a valid contract with binding restrictions" (quotations and

---

[12](...continued)
the California form of grant deed), under the American system of jurisprudence, any such deed is likely to be a deed poll instead of being an indenture. A deed poll is subscribed only by the transferor." (footnotes omitted)). *See generally* 23 Am. Jur. 2d *Deeds* § 3 (2013) (describing "deed poll" as "a deed executed by the grantor only, the usual form of commencement being . . . 'I . . . hereby grant, etc.'" (footnote omitted)).

citation omitted)).[13]  Therefore, we find that the circuit court did not err in concluding that Webber Springs had a valid common law lien against the Homeowners' respective properties for unpaid homeowners association assessments and granting partial summary judgment to Webber Springs on this issue.

The Homeowners additionally contend that, even if Webber Springs had a valid consensual lien for unpaid assessments, it would not have a common law lien for attorney's fees and costs.  Because the Homeowners rely on an application of the West Virginia Consumer Credit and Protection Act to support this argument, we will address the same below in our discussion of the applicability of the Consumer Credit and Protection Act.

### B. *Application of the West Virginia Consumer Credit and Protection Act*

The Homeowners argue that the circuit court erred in concluding that the West Virginia Consumer Credit and Protection Act ("WVCCPA") does not apply to the debt collection practices of Webber Springs, and in making the alternative finding that, even if the WVCCPA did apply, the Homeowners' counterclaims would be time-barred by the one-year limitations period provided in W. Va. Code § 46A-5-101 (1996) (Repl. Vol. 2006).

---

[13]Because we reject the Homeowners' interpretation of the relevant statutes as prohibiting consensual common law liens on real property, we likewise reject their related argument, which is based upon their erroneous interpretation of the statute, that Webber Springs could have a valid lien against real property only if the lien is authorized by statute.

15

Instead, the Homeowners, joined by Amicus Curiae, the West Virginia Association for Justice, contend that the unfair debt collection provisions of the WVCCPA apply more broadly than the remainder of the Act and are applicable to the instant matter. In addition, the Homeowners assert that there is no time limitation applicable to counterclaims to an action against a consumer under the WVCCPA. *See* W. Va. Code § 46A-5-102 (1974) (Repl. Vol. 2006). Accordingly, they assert their counterclams are not time-barred.

Webber Springs, on the other hand, argues that the assessments subject to its collection efforts do not qualify as a "claim" even under the broad definition utilized in the unfair debt collection provisions of the WVCCPA. In this regard, Webber Springs characterizes the assessments as being for *community* purposes, and not "primarily for personal, family or household purposes" as the statutory definition of a "claim" requires. W. Va. Code § 46A-2-122(b) (1996) (Repl. Vol. 2006). Furthermore, Webber Springs asserts that, because the Homeowners' counterclaims do not fall within the WVCCPA, they are barred by the two-year general statute of limitation found in W. Va. Code § 55-2-12 (1959) (Repl. Vol. 2008).

"This Court has recognized that the CCPA is a remedial statute intended to protect consumers from unfair, illegal and deceptive business practices, and must be liberally construed to accomplish that purpose." *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 151,

16

706 S.E.2d 63, 72 (2010). *See also Barr v. NCB Mgmt. Servs., Inc.*, 227 W. Va. 507, 513, 711 S.E.2d 577, 583 (2011) (recognizing "the remedial purposes of the WVCCPA, and the liberal construction we have historically afforded this Act").

The unfair debt collection provisions of the WVCCPA are codified at W. Va. Code §§ 46A-2-122 through 129a. There are certain definitions applicable to only those nine sections. Thus, for purposes of the unfair debt collection provisions of the WVCCPA, the term "consumer" is broadly defined to mean "*any* natural person obligated or allegedly obligated to pay *any debt*." W. Va. Code § 46A-2-122(a) (emphasis added). A "debt collector" for purposes of the specified sections also is broadly defined to be "*any person or organization engaging directly or indirectly in debt collection*. The term includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims." W. Va. Code § 46A-2-122(d) (emphasis added). The plain language[14] of these definitional sections certainly is broad enough to include the Homeowners within the definition of a "consumer" and to include Webber Springs within the definition of the term "debt collector." The instant issue, however, appears to turn on the definition of the term

---

[14]"When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

"claim":

> "Claim" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is *the subject of the transaction is primarily for personal, family or household purposes*, whether or not such obligation has been reduced to judgment.

W. Va. Code § 46A-2-122(b) (emphasis added).

Relevant to our determination of whether the assessments sought by Webber Springs are primarily for personal, family, or household purposes is the asserted reason for the assessments. The Declaration filed by Webber Springs to establish the Webber Springs community expressly sets out the purpose of the assessments as follows:

> Purpose of Assessments: The assessments levied by the Association shall be used exclusively for the purpose of road and street maintenance, promoting the recreation, health, safety, and welfare of the residents in The Properties and in particular for the improvement and maintenance of properties, services, and facilities devoted to this purpose and related to the use and enjoyment of the Common Properties and homes situated on The Properties, including, but not limited to, the payment of taxes and insurance thereon and repair, replacement and additions thereto, and for the cost of labor, equipment, materials, management, and supervision thereof.

While this Court has not addressed whether the unfair debt collection provisions of the WVCCPA apply in the context of homeowners association assessments, this issue has been addressed by federal courts interpreting the federal Fair Debt Collection

18

Practices Act ("FDCPA"). Notably, the FDCPA definition of a "debt" is essentially identical to the definition of a "claim" set out in W. Va. Code § 46A-2-122(b). Pursuant to the FDCPA,

> [t]he term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (2010) (2012 ed.). Federal courts have found the FDCPA to be applicable to the collection of association fees. In *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 479, the court found that "an assessment owed to a homeowners or condominium association qualifies as a 'debt' under the Fair Debt Collection Practices Act." The *Newman* court reasoned that

> [b]y paying the purchase price and accepting title to their home, the [homeowners] became bound by the Declaration of Covenants, Conditions, and Restrictions of their homeowners association, which required the payment of regular and special assessments imposed by the association. . . . It is therefore clear that the obligation to pay in these circumstances arose in connection with the purchase of the homes themselves, even if the timing and amount of particular assessments was yet to be determined.

119 F.3d at 481. Finally, the *Newman* court explained that

> there can be little doubt that the subject of those transactions [the purchase of a home] had a personal, family, or household purpose. More specifically, however, we also believe that the assessments themselves satisfy that statutory requirement. To the extent that the assessments were to be used to improve or

19

> maintain commonly-owned areas, that purpose, too, qualifies as "personal, family, or household." In our view, when a special assessment is used to repair a common roof, or a monthly assessment is used to pay for services like snow removal from a common walkway or landscaping of a common yard, the assessments are for a household purpose even if more than a single household benefits.

*Id.* *See also Ladick v. Van Gemert*, 146 F.3d 1205, 1205 & 1207 (10th Cir. 1998) (concluding that "assessment owed to a condominium association qualifies as a 'debt' within the meaning of the Fair Debt Collection Practices Act" based upon express finding that, "although the assessment at issue here is used to maintain and repair the common area, it nevertheless has a primarily personal, family, or household purpose."); *Williams v. Edelman*, 408 F. Supp. 2d 1261, 1266 (S.D. Fla. 2005) (concluding that condominium assessments are debt within meaning of FDCPA); *Dikun v. Streich*, 369 F. Supp. 2d 781, 785 (E.D. Va. 2005) (observing that "[p]roperty owners association assessments for a plaintiff's residence are debts subject to the FDCPA"); *Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1368 (M.D. Fla. 2002) (explaining, "[l]ike the condominiums in *Newman*, the interests that Plaintiffs bought in the RV park were for personal or family purposes. Also, like the past-due assessments in *Newman*, Plaintiffs' maintenance assessments arose out of the purchase of the interest in the RV park, and the assessments are used to maintain the park for the benefit of the park; thus, the assessments are for personal or family purposes. Moreover, the maintenance assessments are obligations of [sic] arising out [of] the Plaintiffs' transactions in purchasing the interests in the RV park. Therefore, the Court finds that the

20

maintenance assessments that the Association sought to collect . . . are debts subject to the FDCPA."); *Caron v. Charles E. Maxwell, P.C.*, 48 F. Supp. 2d 932, 934 (D. Ariz. 1999) (adopting *Newman* reasoning that homeowners' "'assessments are collected in order to improve and maintain commonly-owned areas used by each unit owner. The [homeowners'] assessments thereby directly benefit each household in the development. As a result, the assessments have a 'personal, family, or household purpose.'" and concluding that, "[l]ike the other courts that have followed the reasoning set forth in *Newman*, this Court is persuaded by the reasoning of the Seventh Circuit" (quoting *Newman*, 119 F.3d at 481–82) (emphasis omitted)); *Garner v. Kansas*, No. CIV. A. 98-1274, 1999 WL 262100, at *2 (E.D. La. Apr. 30, 1999) ("Upon review of the FDCPA and the case law discussing this issue, the Court concludes that condominium fees do constitute 'debts' under the FDCPA."); *Taylor v. Mount Oak Manor Homeowners Ass'n, Inc.*, 11 F. Supp. 2d 753, 754 (D. Md. 1998) (concluding that homeowners association's assessments are "debts" under the FDCPA); *Thies v. Law Offices of William A. Wyman*, 969 F. Supp. 604, 608 (S.D. Cal. 1997) (applying *Newman* rationale and concluding "homeowner association fees for maintenance and improvement of common areas within a housing development are a service primarily for personal, family, and household purposes"). *But see Nance v. Petty, Livingston, Dawson & Devening*, 881 F. Supp. 223, 225 (W.D. Va. 1994) (citing 15 U.S.C. § 1692a(5) and finding assessment by subdivision for maintenance of private road was not "'primarily for personal, family, or household'" purposes (quoting 15 U.S.C. § 1692a(5))).

We agree with the reasoning of the federal courts interpreting a nearly identical statute. Therefore, this Court holds that homeowners association assessments that are to be used for improving and/or maintaining common areas of a planned community, including, but not limited to, maintaining common roads and common recreational areas within the community, are an obligation primarily for personal, family, or household purposes, and, therefore, such assessments are "claims" pursuant to W. Va. Code § 46A-2-122(b) (1996) (Repl. Vol. 2006). It follows, then, that because the Homeowners are consumers, because Webber Springs is a debt collector, and because the assessments are claims, the unfair debt collection provisions of the WVCCPA do apply to this matter. Thus, the circuit court erred in granting partial summary judgment in favor of Webber Springs based upon its erroneous conclusion that the WVCCPA was not applicable. Likewise, the circuit court erred in finding that the Homeowners' WVCCPA counterclaims are barred by the statute of limitations. The counterclaims of the Homeowners are not time-barred. *See* W. Va. Code § 46A-5-102 ("Rights granted by this chapter may be asserted as a defense, setoff or counterclaim to an action against a consumer *without regard to any limitation of actions*." (emphasis added)).

Because the circuit court ruled that the WVCCPA did not apply, that court has made no rulings purporting to resolve the Homeowners' specific claims under the WVCCPA, including their claim that Webber Springs is prohibited from collecting attorney's fees and costs. Accordingly, we decline to address the Homeowners' contention that Webber Springs

22

is prohibited from collecting attorney's fees and costs as such a decision by this Court would be advisory. "[T]his Court is not authorized to issue advisory opinions[.]" *State ex rel. City of Charleston v. Coghill*, 156 W. Va. 877, 891, 207 S.E.2d 113, 122 (1973) (Haden, J., dissenting).

## IV.

## CONCLUSION

For the reasons stated in the body of this opinion, we conclude that W. Va. Code § 38-16-202(a) (1999) (Repl. Vol. 2011) and W. Va. Code § 38-16-201 (1999) (Repl. Vol. 2011) authorize a consensual common law lien against real property and that the unfair debt collection provisions of the WVCCPA do apply to a homeowners association's attempts to collect delinquent assessments. Accordingly, we affirm, in part; reverse, in part; and remand this case for further proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded.