# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Glade Springs Village Property
Owners Association, Inc.,
Defendant Below, Petitioner**

**vs.) No. 22-0003** (Raleigh County 19-C-481)

**Justice Holdings, LLC,
Plaintiff Below, Respondent**


## MEMORANDUM DECISION


Petitioner Glade Springs Village Property Owners Association, Inc. appeals the Circuit Court of Raleigh County's March 16, 2020, order dismissing its claims brought pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), West Virginia Code §§ 46A-1-101 to -8-102.[1] Upon our review, we find no substantial question of law and no prejudicial error. Accordingly, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

Glade Springs Village is a residential development project near Daniels, West Virginia. In conjunction with the creation of Glade Springs Village, petitioner, a nonprofit corporation, was created. In 2001, petitioner entered into a Loan Agreement and Revolving Note (collectively "the Utilities Loan") with Cooper Land Development, Inc. ("Cooper") to obtain funds for the construction of water, sewer, and electrical services for the benefit of the lots in Glade Springs Village. Per the Utilities Loan, Cooper agreed "to grant credit to [petitioner] at any time and from time to time . . . by making revolving loans to [petitioner]." The Utilities Loan further provided that petitioner agreed to secure payment of the loan by granting a security interest to Cooper "in such real and/or personal property of [petitioner] as Cooper may from time to time elect." In 2010, Respondent Justice Holdings, LLC obtained Cooper's interest in the Utilities Loan.

In 2019, respondent brought a civil action against petitioner alleging that petitioner breached the Utilities Loan. In its counterclaim, petitioner included five counts alleging that respondent violated the WVCCPA. Respondent filed a motion asking the circuit court to dismiss

---

[1] The circuit court's March 16, 2020, order was rendered final and appealable as of December 3, 2021, by a separate order entered on December 3, 2021. Petitioner appears before this Court by counsel Mark A. Saad and Ramonda C. Marling. Respondent appears by counsel Shawn P. George and Jennie O. Ferretti.

1

petitioner's WVCCPA claims.

On March 16, 2020, the circuit court entered an order granting respondent's motion. The court determined that petitioner could not maintain WVCCPA claims against respondent because petitioner did not qualify as a "consumer" under the WVCCPA and because the transaction was not a "consumer transaction" as the Utilities Loan consisted of "commercial documents reflecting a commercial transaction." The circuit court further determined:

> The [c]ourt rejects [petitioner]'s argument that the individual members are the real parties in interest under the WVCCPA and entitled to assert claims through [petitioner] against [respondent] regarding the Loan and Note at issue. [The Uniform Common Interest Ownership Act ("UCIOA"), §§ 36B-1-101 to -4-120] provides a mechanism by which money judgments against a property owner's association such as [petitioner] can be satisfied through assessments. . . . However, assessments do not give rise to personal liability of the association members. . . .
> [The] UCIOA does not supply derivative standing to the [petitioner] to assert WVCCPA claims under the facts here.
> Any obligation of the [petitioner] to pay the Loan and Note is not a personal obligation of the [petitioner]'s members. While the unit interest or real property of a member may be affected by and subject to a judgment or lien, neither can extend beyond the member's ownership of their unit or property. . . .
> Under [the] UCIOA, a [property owner's association] may assert claims on behalf of its members on matters affecting the common interest community. . . . However, [the] UCIOA does not empower a [property owner's association] to assert claims arising under [the] WVCCPA.

Petitioner now appeals the circuit court's order, arguing that the court erred by dismissing its WVCCPA claims. Our review of the circuit court's decision is de novo. *See* Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.").

The WVCCPA defines a "consumer" as "a natural person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease." W. Va. Code § 46A-1-102(12); *see also* W. Va. Code § 46A-2-122(a) ("'Consumer' means any natural person obligated or allegedly obligated to pay any debt."). The WVCCPA defines a "consumer loan" as "a loan made by a person regularly engaged in the business of making loans in which," among other things, "[t]he debtor is a person other than an organization." W. Va. Code § 46A-1-102(15). We have previously explained that "[t]he purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *Vanderbilt Mortg. & Fin., Inc. v. Cole*, 230 W. Va. 505, 511, 740 S.E.2d 562, 568 (2013) (quoting *Dunlap v. Friedman's, Inc.*, 213 W. Va. 394, 399, 582 S.E.2d 841, 846 (2003)); *see also State ex rel. Morrisey v. Copper Beach Townhome Cmtys. Twenty-Six, LLC*, 239 W. Va. 741, 744, 806 S.E.2d 172, 175 (2017) ("The [WVCCPA] is intended to: (1) increase the availability of consumer credit by raising allowable finance charges (interest rates) and move toward equalization of rates available to consumers whether they borrow the money

2

from a lender or buy the goods on credit from a seller; (2) regulate the rate of finance charges allowed for consumer credit transactions by prescribing rates and rules for computation; (3) regulate those businesses which make small consumer loans and which were formerly regulated by the small loan act; (4) protect consumers who purchase goods or services on credit or through consumer loans from deceptive selling techniques, unconscionable contract terms, and undesirable debt recovery and collection practices; and (5) protect consumers who purchase goods or services for cash or credit from, and to give them remedies for, defective or shoddy goods and services and unfair and deceptive selling practices." (quoting V. Cardi, *The West Virginia Consumer Credit and Protection Act*, 77 W.Va. L. Rev. 401, 402 (1974-75))).

In this case, the debtor named in the Utilities Loan—petitioner—is an organization, not a natural person. The Utilities Loan was negotiated and executed by two organizations: petitioner and respondent's predecessor in interest. Under the plain language of the WVCCPA, petitioner cannot maintain WVCCPA claims against respondent because petitioner is not a "consumer" as that term is defined by the WVCCPA and because the Utilities Loan does not constitute a "consumer loan" as that term is defined by the WVCCPA.

In an attempt to circumvent the plain language of the WVCCPA, petitioner claims that its assessment-paying members are the only real parties in interest to the Utilities Loan; that its assessment-paying members are consumers within the meaning of the WVCCPA; that it "has no financial interest in the [Utilities] Loan"; and that its assessment-paying members, not petitioner itself, are personally liable to respondent under the Utilities Loan. Thus, according to petitioner, it can maintain WVCCPA claims on behalf of its assessment-paying members and is empowered to do so by the UCIOA.[2] In support of its position, petitioner cites to *Fleet v. Webber Springs Owners Ass'n*, 235 W. Va. 184, 772 S.E.2d 369 (2015), and cases decided by district courts of appeal in Florida.

In *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997), the Court explained that, to qualify as a real party in interest, a party must "establish [it has] a right under the substantive law to initiate a lawsuit to enforce some right." *Id.* at 678, 490 S.E.2d at 765. Assuming without deciding that petitioner's assessment-paying members are real parties in interest to this action, and assuming without deciding that the UCIOA applies as contended by petitioner to permit petitioner

---

[2] Under the UCIOA:

> Except as provided in subsection (b), and subject to the provisions of the declaration, the association, even if unincorporated, may:
> . . . .
> (4) Institute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community[.]

W. Va. Code § 36B-3-102(a). The Court has held that this provision "confers standing on the unit owners' association to assert claims on behalf of two or more unit owners with respect to matters affecting their individual units." Syl. Pt. 4, in part, *Univ. Commons Riverside Home Owners Ass'n v. Univ. Commons Morgantown, LLC*, 230 W. Va. 589, 741 S.E.2d 613 (2013).

to sue on behalf of its assessment-paying members, the relief sought by petitioner under the WVCCPA would still be unavailable. As noted above, the WVCCPA applies to consumers and consumer loans, and when the debtor is an organization, the loan cannot be considered a consumer loan. The WVCCPA carves out no exception for contracts negotiated and executed by a property owner's association on behalf of its members, regardless of whether, as petitioner contends, the association's members may ultimately be personally liable under the contract. Further, the UCIOA contains no language explicitly permitting a property owner's association to assert WVCCPA claims on behalf of its members when those claims arise from a contract executed by the association. Simply put, there is no law that allows petitioner to maintain WVCCPA claims on behalf of its assessment-paying members.

Petitioner's reliance on *Fleet* is unavailing as the facts of that case are distinguishable from the facts of the present case. In *Fleet*, the property owner's association asserted liens on real property owned by its members for unpaid assessments pursuant to the declaration for the planned community. 235 W. Va. at 186-87, 772 S.E.2d at 371-72. The affected homeowners asserted claims against the association under the WVCCPA. *Id.* at 187, 772 S.E.2d at 372. The Court determined that the WVCCPA "is broad enough to include the [h]omeowners within the definition of a 'consumer' and to include [the association] within the definition of the term 'debt collector.'" *Id.* at 192, 772 S.E.2d at 377. The Court further determined that the assessments subject to the association's collection efforts were debt collection claims within the meaning of the WVCCPA. *Id.* at 194, 772 S.E.2d at 379. Accordingly, the Court concluded, "[B]ecause the [h]omeowners are consumers, because [the association] is a debt collector, and because the assessments are claims, the unfair debt collection provisions of the WVCCPA do apply to this matter." *Id.*

The facts of the present case are not comparable to those in *Fleet*. The liability at issue here arises from a contract negotiated and executed by a developer and a property owner's association, not from assessments owed by a property owner to the property owner's association. Petitioner's reliance on cases decided by district courts of appeal in Florida is similarly unavailing because, even if they were somehow binding on this Court, none of those cases involves consumer protection claims. *See Yacht Club Se., Inc. v. Sunset Harbour N. Condo. Ass'n*, 843 So. 2d 917, 919 (Fla. Dist. Ct. App. 2003) (determining that, under a Florida statute authorizing a property owner's association to bring a lawsuit on behalf of its members for construction defects, the members of the association are the "real parties in interest" and that a "developer [may] disclose[] mutually privileged mediation communications [between the developer and the association] to" the association's members); *Lennar Homes, LLC v. Martinique at Oasis Neighborhood Ass'n*, 332 So. 3d 1054, 1056 (Fla. Dist. Ct. App. 2021) (holding that, in an action against a developer alleging construction defects, "the Association's right to sue in its representative capacity requires it to comply with the arbitration agreements signed by each of its members" (quotation omitted)); *Pulte Home Corp. v. Vermillion Homeowners Ass'n*, 109 So. 3d 233, 235 (Fla. Dist. Ct. App. 2013) (concluding that, in a suit brought by a property owner's association against a developer alleging construction defects, the developer is "entitled to enforce its arbitration agreements as to claims arising from the individual homeowners' contracts" with the developer); *Hollywood Mobile Estates Ltd. v. Hollywood Estates Indep. Tenants Ass'n*, 67 So. 3d 1194, 1196 (Fla. Dist. Ct. App. 2011) (determining that, in a class action suit filed by a property owner's association on behalf of its members challenging increased rent, the members of the association are the "real parties in interest" and can be compelled, under a Florida statute, to deposit rent into a court registry).

Petitioner also argues that it has representational standing to bring WVCCPA claims on behalf of its members. Petitioner compares its representation of its members to class action representation. Syllabus Point 4 of *Affiliated Construction Trades Foundation v. West Virginia Department of Transportation*, 227 W. Va. 653, 713 S.E.2d 809, holds:

> An organization has representative standing to sue on behalf of its members when the organization proves that: (1) at least one of its members would have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Under this holding, petitioner does not have representative standing to maintain the WVCCPA claims because none of its members would have standing to sue respondent in his or her own right as petitioner is an organization and, accordingly, the Utilities Loan does not constitute a consumer loan under the WVCCPA. *Cf. Hafer v. Skinner*, 208 W. Va. 689, 693, 542 S.E.2d 852, 856 (2000) (determining that the member of a partnership could not maintain WVCCPA claims where the loan at issue was made to the partnership and thus was not a consumer loan within the meaning of West Virginia Code § 46A-1-102(15)).

In sum, we agree with the circuit court's conclusion that petitioner cannot maintain WVCCPA claims against respondent, and we find no error in the dismissal of those claims.

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:** April 5, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISQUALIFIED:**

Justice John A. Hutchison
Justice William R. Wooton