# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Robert Kelley, Sharon George, Jim Kelley,
Delores Stutler, Wilma Jones, George Kelley,
and Sharon Ann Kelley, Plaintiffs Below,
Petitioners

vs) No. 15-0188 (Taylor County 14-C-30)

Norma Kelley, as an individual, and as
Executrix of the Estate of Paul Kelley,
Defendant Below, Respondent

**FILED**

November 23, 2015

**RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioners Robert Kelley, Sharon George, Jim Kelley, Delores Stutler, Wilma Jones, George Kelley, and Sharon Ann Kelley, by counsel Peter D. Dinardi, appeal the Circuit Court of Taylor County's February 4, 2015, order granting respondent's motion for summary judgment. Respondent Norma Kelley, by counsel Geraldine S. Roberts and Richard R. Marsh, filed a response and a supplemental appendix. On appeal, petitioners allege that the circuit court erred in finding there were no material facts in dispute and in granting the summary judgment motion without allowing for discovery on newly pled causes of action.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Paul Kelley ("Mr. Kelley"), the deceased, was the father of petitioners herein, Robert Kelley, Sharon George, Jim Kelley, Delores Stutler, Wilma Jones, and George Kelley. Petitioner Sharon Ann Kelley is the widow of Paul Kelley's other child, Donald Kelley. Mr. Kelley was previously married to the children's mother, Edith Eckard Kelley, who passed away on December 14, 1998. Sometime in 1999 or 2000, Mr. Kelley began a relationship with Norma Kelley, then Norma Swiger, respondent herein.

In December of 2007, Mr. Kelley was hospitalized at the Louis A. Johnson Medical Center ("VA Hospital") in Clarksburg, West Virginia, for heart issues. He was released that same month. In February of 2008, Mr. Kelley was again admitted to the VA Hospital and then transferred to Ruby Memorial Hospital in Morgantown, West Virginia. He was released that same month. Prior to and during the hospitalizations, Mr. Kelley and respondent discussed marriage. Following his release in February of 2008, the two were married. After the marriage,

1

Mr. Kelley requested that his neighbor James C. West, who had previously performed various legal services for Mr. Kelley, come to his business to discuss preparation of a last will and testament. During the meeting, Mr. Kelley told Mr. West what he wanted to do with his property and requested that Mr. West prepare a will to that effect. Mr. Kelley met with Mr. West on March 26, 2008, at Mr. West's office to review and execute his last will and testament. Pursuant to this will, respondent was Mr. Kelley's sole heir.

In March of 2012, Mr. Kelley entered into a sale-purchase agreement with petitioner Robert Kelly and two other individuals. That agreement obligated Mr. Kelley to sell his welding shop and associated real property to them. On March 16, 2012, the parties closed the deal and Mr. Kelley executed a deed to the buyers. Then, on April 5, 2012, the buyers executed a correction deed indicating that Mr. Kelley intended to except and reserve the minerals under the welding shop property and conveyed any such mineral interests back to Mr. Kelley. The record also sets forth that Mr. Kelley executed forty different legal documents that were placed on record in the Office of the Clerk of the County Commission of Harrison County since 1998, including several conveyances to his children and their families involving a number of deeds.

In May of 2012, Mr. Kelley passed away and, thereafter, respondent qualified as his executrix and began administering his estate. In July of 2012, petitioners filed a complaint in the Circuit Court of Harrison County against respondent and requested that the last will and testament and a pair of deeds executed by Mr. Kelley be declared invalid on the basis of Mr. Kelley's alleged lack of competency to execute such documents or that they were procured as a result of undue influence. The parties completed extensive discovery and were ready to try the matter when the circuit court determined that it did not have subject matter jurisdiction because the last will and testament was submitted to probate in Taylor County, West Virginia. By order dated April 16, 2014, the circuit court dismissed the action.

That same month, petitioners filed the instant lawsuit in the Circuit Court of Taylor County. Petitioners alleged the same grounds for relief and also alleged tortious interference and fraud. Respondent filed her motion for summary judgment in September of 2014, and petitioners filed their response the following month. After respondent filed a reply, the circuit court held a hearing on the motion in November of 2014, after which it entered an order granting the same. It is from that order that petitioners appeal.

We have previously held that "'[a] circuit court's entry of summary judgment is reviewed *de novo*.' Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." *Fleet v. Webber Springs Owners Ass'n, Inc.*, 235 W.Va. 184, - -, 772 S.E.2d 369, 373 (2015). Further,

> [i]n conducting our *de novo* review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

*Id.* Upon our review, the Court finds no error in the circuit court granting summary judgment to respondent because petitioners failed to establish a genuine issue of material fact. And while it

may be true that no discovery was conducted in the instant matter after petitioners alleged two new causes of action for tortious interference and fraud, the record is clear that sufficient discovery was conducted in the prior Harrison County proceeding for the circuit court to rule on the new causes of action.

On appeal, petitioners allege that several of Mr. Kelley's medical records showed that he lacked capacity to execute his will and that these medical records create a genuine issue of material fact such that summary judgment was improper. The Court, however, does not agree. With the exception of two specific records, all the medical records petitioners rely on are from the period beginning with February of 2009 and ending as late as April of 2012. Simply put, these medical records are irrelevant to Mr. Kelley's state of mind at the time of the will's execution in March of 2008. Further, the circuit court discusses, at great length, the medical records from that relevant time period in its order granting respondent summary judgment.

Further, while petitioners argue that no discovery was completed on the issues of tortious interference and fraud, they also admit that "substantial discovery was done when the case was before the [Circuit Court of] Harrison County[.]" In regard to their claim of fraud, the circuit court specifically found that petitioners failed to "set forth any factual allegations that would support a claim for fraud under the particularity requirements for fraud claims per West Virginia Rule of Civil Procedure 9(b)." Further, as to their claim of tortious interference, the circuit court found that "[t]o the extent that [petitioners] have asserted that Paul Kelley disinherited them, as a matter of law, they were not entitled to any inheritance." The circuit court then went on to provide a full analysis of why petitioners' claim on this issue must fail, even after substantial discovery into the issues surrounding Mr. Kelley's will and its execution.

Additionally, we have previously held that

[w]here a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to W. Va. R. Civ. P. 56(f) and obtain a ruling thereon by the trial court. *Such affidavit and ruling thereon, or other evidence that the question of a premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court.*

*Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987) (emphasis added). The record on appeal is devoid of any such affidavit. Further, in their brief, petitioners fail to even allege what evidence, if any, could support these causes of action.

Upon our review and consideration of the circuit court's order, the parties' arguments, and the record submitted on appeal, we find no error by the circuit court. Our review of the record supports the circuit court's decision to grant respondent's motion for summary judgment in spite of petitioners' alleged errors, which were also argued below. Indeed, the circuit court's order includes well-reasoned findings and conclusions as to the assignments of error raised on appeal. Given our conclusion that the circuit court's order and the record before us reflect no clear error, we hereby adopt and incorporate the circuit court's findings and conclusions as they

relate to petitioner's assignments of error raised herein and direct the Clerk to attach a copy of the circuit court's February 4, 2015, "Order Granting Summary Judgment In Favor Of Defendant" to this memorandum decision.

For the foregoing reasons, the circuit court's February 4, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

## IN THE CIRCUIT COURT OF TAYLOR COUNTY, WEST VIRGINIA

ROBERT KELLEY, SHARON GEORGE,
JIM KELLEY, DELORES STUTLER,
WILMA JONES, GEORGE KELLEY,
and SHARON ANN KELLEY,

Plaintiffs,

v.

NORMA KELLEY, as an individual and
as Executrix of the Estate of PAUL KELLEY,

Defendant.

ENTERED OF RECORD

FEB 0 4 2015

_____ ORDER BOOK

NO. __43__ PAGE __2013 1__

Civil Action No. 14-C-30
Honorable Alan D. Moats

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

On the 6th day of November, 2014, came Norma Kelley, in person and by her counsel, Geraldine S. Roberts, and came Peter D. Dinardi, counsel for the Plaintiffs, for a hearing on the Defendant's previously filed Motion for Summary Judgment.

After having reviewed said motion, along with the Plaintiffs' response thereto and the Defendant's reply thereto, reviewed the relevant case law, and heard oral arguments of respective counsel, the Court hereby issues the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

A.      Procedural Background

1.      On or about July 12, 2012, the Plaintiffs filed an action styled *Robert Kelley, Sharon George, Jim Kelley, Delores Stutler, Wilma Jones, George Kelley, and Sharon Ann Kelley v. Norma Kelley, as an individual and as Executrix of the Estate of Paul Kelley* in the Circuit Court of Harrison County, Civil Action No. 12-C-323-3.

Civil Action No. 14-C-30

2. In that action, the Plaintiffs requested that a last will and testament and a pair of deeds executed by their father Paul Kelley be declared invalid on the basis of Paul Kelley's lack of competency to execute such documents or that they were procured as a result of undue influence.

3. The parties completed discovery in Harrison County Civil Action No. 12-C-323-3 and both sides were prepared to try the action when the Circuit Court of Harrison County determined that it did not have subject matter jurisdiction because the last will and testament at issue was submitted to probate in Taylor County, West Virginia.

4. By Order dated April 16, 2014, the Circuit Court of Harrison County dismissed Civil Action No. 12-C-323-3 in part for lack of subject matter jurisdiction over the last will and testament of Paul Kelley. Such Order stayed the action as it pertained to the challenged deeds.

5. On or about April 28, 2014, the Plaintiffs filed the instant action. In their Complaint to Set Aside Deeds and Will, the Plaintiffs requested that the Court set aside the last will and testament of Paul Kelley along with two deeds he executed in April 2012 on the grounds of lack of competency, undue influence, tortious interference, and fraud.

6. On or about July 1, 2014, the Defendant filed her Motion to Exceed Page Limit for Memorandum in Support of Defendant's Motion for Summary Judgment, which the Court granted by Order dated July 14, 2014.

7. On or about September 2, 2014, the Defendant filed her motion for summary judgment and supporting memorandum.

8. On or about October 2, 2014, the Plaintiffs filed their response to the motion for

summary judgment.

9. On or about October 17, 2014, the Defendant filed her reply to the response to the motion for summary judgment.

10. On November 6, 2014, the Court held a hearing on the motion for summary judgment and on December 1, 2014, issued an Order directing counsel for the Defendant to prepare a proposed Order Granting Summary Judgment and to include findings of fact and conclusions of law within.

B. FACTUAL BACKGROUND

I. Factual background regarding the parties and their relationship

11. Paul Kelley was the father of Plaintiffs Robert Kelley, Sharon George, Jim Kelley, Delores Stutler, Wilma Jones, and George Kelley. Plaintiff Sharon Ann Kelley is the widow of Paul Kelley's other child, Donald Kelley.

12. Paul Kelley was previously married to his children's mother, Edith Eckard Kelley. Edith Eckard Kelley passed away on December 14, 1998.

13. Paul Kelley was a successful businessman. He worked for the B&O Railroad in Clarksburg, West Virginia, for many years. He also owned a welding business, Kelly Welding Shop, Inc. He also had interests in an oil and gas company, PK Eastern Energy Corp., and a coal company, P.W.K. Development, Inc.

14. During his life, Paul Kelley operated his welding shop, secured oil and gas leases, and bought and mined coal for and on behalf of his various companies.

15. In 1999 or 2000, Paul Kelley started seeing Norma Kelley romantically.

16. In December 2007, Paul Kelley was hospitalized at the Louis A. Johnson Medical Center ("VA Hospital") in Clarksburg, West Virginia, for heart issues.

17. Paul Kelley was released from the VA Hospital on December 21, 2007.

18. In February 2008, Paul Kelley was again admitted to the VA Hospital and then transferred to Ruby Memorial Hospital in Morgantown, West Virginia. He was released from Ruby Memorial Hospital on February 19, 2008.

19. Prior to and during the hospitalizations, Paul Kelley and Norma Kelley had discussed marriage. Upon returning home on February 19, 2008, Paul Kelley asked Norma Kelley to marry him that evening. She said yes. Paul Kelley then called the Honorable Thomas A. Bedell to come to the house that evening to marry them. He also called his friend Edward Matko, Esq. to act as a witness.

**II.     Factual background regarding the preparation and execution of Paul Kelley's last will and testament.**

20. James C. West, Jr. lived beside Paul Kelley's property and had performed various legal services from approximately 2001 through 2008.

21. Paul Kelley and Mr. West had begun discussing Paul Kelley's Last Will and Testament in 2006 or 2007.

22. In February 2008, Mr. West came to Paul Kelley's welding shop at Paul Kelley's request to meet with him regarding the preparation of his Last Will and Testament. During that meeting, Paul Kelley told Mr. West what he wanted to do with his property and requested that Mr. West prepare a will to that effect.

23. Plaintiff Sharon George was present at the meeting between Mr. West and Paul

Kelley. Per her testimony, Paul Kelley asked Mr. West, "Jay ... how can I put Jeannie[1] on this original will?" Sharon George Depo. 37:22-23. After Sharon George told them to add Norma Kelley an eighth, like the eighth child," id. at 38:3-5, Mr. West asked her to leave so he and Paul Kelley could speak privately.

24.     Paul Kelley next met with Mr. West on March 26, 2008, at Mr. West's office to review and execute his last will and testament.

25.     During that meeting, Mr. West inquired about the proper disposition of the assets and Paul Kelley affirmed his request.

26.     Paul Kelley executed the Last Will and Testament at the offices of West & Jones on March 26, 2008, and such will was properly witnessed.

### III.     Factual background regarding execution of other legal documents

27.     As set forth in Exhibit 14 to the Defendant's Memorandum in Support of Summary Judgment, Paul Kelley executed forty different legal documents that were placed on record in the Office of the Clerk of the County Commission of Harrison County since 1988.

28.     A number of those documents were conveyances to Paul Kelley's children. Specifically, Paul Kelley executed two deeds to Sharon George, said deeds being dated February 8, 1989, and March 28, 2005. He executed a deed dated January 3, 1990, to Wilma Jones. He executed a deed dated November 20, 1992, to James W. Kelley.

29.     Paul Kelley also executed a number of deeds to Plaintiff Robert Kelley and his family. In 2002, Paul Kelley, by deed dated February 8, 2002, gave Robert Kelley and his wife a

---

[1]Norma Kelley's full, married name is Norma Jean Kelley. "Jeannie" is the name she normally goes by and how Paul Kelley referred to her.

Civil Action No. 14-C-30

one-half acre tract of real property. By deed dated January 23, 2002, he gave Robert Kelley's son James Scott Kelley a one-acre tract of real property. He also gave James Scott Kelley an additional 1.87 acre tract by deed dated February 8, 2002. Robert Kelley's son Robert Lee Kelley, Jr. received a 3.44 acre tract of real property from Paul Kelley by deed dated February 8, 2002.

30. Paul Kelley also conveyed his house to Robert Kelley's granddaughter Natasha Yeste his house by deed dated November 9, 2007, reserving a life estate interest for himself. That deed was prepared by James C. West, Jr. approximately one month before Paul Kelley's first heart attack.

31. On September 25, 2008, Paul Kelley entered into a Credit Line Deed of Trust with BB&T for the benefit of Natasha Yeste, pledging his life estate interest in his house as collateral for a loan she was entering into.

32. On September 12, 2008, Paul Kelley executed two oil and gas leases with Clarence Mutschelknaus as lessee.

**IV.    Factual background as to sale of welding shop**

33. By deed dated August 17, 2010, Paul Kelley conveyed his welding shop to William Kelley.

34. Paul Kelley undid that sale and William Kelley executed a deed dated December 6, 2010, to reconvey the welding shop to Paul Kelley.

35. Even after that sale did not work out, Paul Kelley still wanted to sell the shop as acknowledged by Plaintiffs Wilma Jones and Robert Kelley.

Civil Action No. 14-C-30

36. Plaintiff Robert Kelley told potential buyers that there was going to be a lot of trouble if they tried to buy the shop from Paul Kelley.

37. Plaintiff Robert Kelley did this because he wanted the shop for himself because he believed the shop should have belonged to him. Per his testimony, "[Paul Kelley] wound up with 75,000, you know, when it shouldn't been I shouldn't have had to pay for it." Robert Kelley Depo. 28:23-29:1 Plaintiff Delores Stutler testified, "Bob bought something that belonged to him, not [Norma Kelley's] son." Delores Stutler Depo. 42:6-7.

38. In March 2012, Plaintiff Paul Kelley entered into a sale-purchase agreement with Plaintiff Robert L. Kelley; Robert L. Kelley, Jr.; and James S. Kelley to sell the welding shop. Pursuant to that agreement, Plaintiff Robert L. Kelley; Robert L. Kelley, Jr.; and James S. Kelley would pay Paul Kelley $50,000 up front and $25,000 within a year after closing.

39. Paul Kelley executed a deed to Plaintiff Robert L. Kelley.; Robert L. Kelley, Jr.; and James S. Kelley on March 16, 2012, said deed being recorded in Deed Book No. 1486 at page 222.

40. On April 5, 2012, Plaintiff Robert L. Kelley; Robert L. Kelley, Jr.; and James S. Kelley executed a Correction Deed clarifying that Paul Kelley intended to except and reserve the minerals under the welding shop property and conveyed any such mineral interest back to Paul Kelley.

V. **Findings of Fact as to the Plaintiffs' testimony regarding Paul Kelley's knowledge**

41. All of the Plaintiffs except for Plaintiff Sharon Kelley were deposed in Civil Action No. 12-C-323-3.

42. The Plaintiffs did not highlight any portion of their deposition transcripts in their response to the motion for summary judgment.

43. Plaintiff Sharon George testified that her father "always knew who [she] was." Sharon George Depo. at 39:24-40-2.

44. Plaintiff Robert Kelley testified that his father knew who he was and who his brothers and sisters were.

45. In her deposition, Plaintiff Delores Stutler stated that Paul Kelley knew that Plaintiff Robert Kelley was his son. Further, she asked, "How do you forget that many kids?" Delores Stutler Depo. 58:20-24. She then answered her own question, "You couldn't[,]" thus indicating that Paul Kelley knew his children. Id. at 59:3.

46. None of the other Plaintiffs indicated that Paul Kelley did not know who they were.

47. Paul Kelley knew that he owned the welding shop. Plaintiff Sharon George's testimony was that "[h]e was bound and determined he was going to sell that shop." Sharon George Depo. 99:2-3. Moreover, Plaintiffs Delores Stutler and Wilma Jones both testified that Paul Kelley knew he owned the shop and wanted to sell it. See Delores Stutler Depo. 58:18-19 and Wilma Jones Depo. 43:5-44:5.

## VI. Findings of Fact as to Paul Kelley's medical records

48. As exhibits to her memorandum in support of summary judgment, the Defendant attached numerous medical records detailing the medical care of Paul Kelley from January 2008 through June 2008. Such records are incorporated herein and the Defendant provides a detailed

Civil Action No. 14-C-30

summary of such medical records in her memorandum. Such summary is incorporated herein.

49. On January 29, 2008, the VA secured Paul Kelley's consent for the injection of a radioactive tracer. The relevant medical record states, "The patient HAS decision-making capacity." See Ex. 6.1 to Memo. in Support of Mot. for Summ. J. Moreover, the medical records include the entire form, which was signed by Dr. Shehl and Paul Kelley, along with an attesting witness, Debbie Parks, cct.

50. On February 9, 2008, Diana Hefner, a speech pathologist at the VA, examined Paul Kelley. Her notes state that Paul Kelley does not have decreased consciousness, decreased orientation, an inability to follow simple commands, or poorly articulated speech.

51. On February 10, 2008, George Rider, a social worker at the VA, provided Paul Kelley with a medical power of attorney and living will.

52. On February 11, 2008, Dr. Shehl examined Paul Kelley and was able to discuss various options for medical treatment with him.

53. Nursing notes generated by the VA from February 12, 2008, through February 16, 2008, all describe Paul Kelley's level of consciousness as "alert" and that he is oriented to person, place, and time. Further, they indicate that he had a complete understanding and demonstration of his care.

54. On February 20, 2008, Dr. Shehl examined Paul Kelley again. In that record, Dr. Shehl stated that Paul Kelley told him that he was agreeable to further treatment "but only if it looks like he will live longer and with a better quality of life." Ex 4.3 to Memo. in Support of Summ. J. at p. 3. Those notes clearly indicate that Dr. Shehl allowed Paul Kelley to make his

Civil Action No. 14-C-30

own decisions about medical care.

55.    On March 11, 2008, the VA secured informed consent from Paul Kelley for a treadmill stress test. The consent form specifically states, "The patient HAS decision-making capacity." See Ex. 6.4 to Memo. in Support of Summ. J. at p. 3. Once again, Dr. Shehl and Paul Kelley both signed the consent form. As part of his signing, Dr. Shehl once again attested that Paul Kelley "demonstrated comprehension of the discussion." Id.

56.    On May 7, 2008, the VA created a medical record indicating that Norma Swiger [Kelley] was Paul Kelley's fiancee. On May 19 and June 15, 2008, the VA created medical records indicating that Paul Kelley was married to Norma Kelley.

57.    On June 15, 2008, Paul Kelley was treated at the emergency room at the VA. Medical records from that visit indicate that he was initially disoriented. However, the record is contradictory in that it also lists Paul Kelley's neurological status as alert and oriented. Paul Kelley was discharged from the emergency room approximately an hour and a half after admission at which time he was able to verbalize and demonstrate his understanding of those instructions and the presiding nurse characterized his level of understanding as good. Paul Kelley signed the discharge papers from that emergency room visit.

58.    During the June 15, 2008 emergency room visit, Paul Kelley was treated by Dr. Clara Wang-Liang. Paul Kelley was able to verbalize and describe his symptoms to Dr. Clara Wang-Liang. Further, she offered to admit him, but allowed him to go home when he stated that he did not want to be admitted and wanted to go home.

VII.    Findings of fact as to April 2012 deeds

59. On April 2, 2012, Paul Kelley executed a Quitclaim Deed from himself to Norma Kelley conveying certain oil and gas interest to her.

60. On April 4, 2012, Paul Kelley executed a Deed conveying certain oil and gas interests to Norma Kelley.

61. The April 4, 2012 Deed was prepared by Peter J. Conley.

**VII. Findings of fact as to deposition of VA doctors**

62. As part of Civil Action No. 12-C-323-3, the Plaintiffs attempted to depose some or all of the VA doctors. The United States of America resisted such efforts.

63. The Circuit Court of Harrison County granted the Plaintiffs' motion to compel to depose some or all of the VA doctors.

64. The United States of America removed that issue to the United States District Court for the Northern District of West Virginia. Said case was then styled *Robert Kelley, Sharon George, Jim Kelley, Delores Stutler, Wilma Jones, George Kelley, and Sharon Ann Kelley v. Norma Kelley, as an individual and as Executrix of the Estate of Paul W. Kelley, deceased, Defendant, and USA on behalf of its agency, US Department of Veterans Affairs, Interested Party*, United States District Court for the Northern District of West Virginia, Civil Action No. 1:13-CV-224.

65. The United States District Court for the Northern District of West Virginia held that the Circuit Court of Harrison County did not have jurisdiction to compel the VA doctors' depositions. Further, the United States District Court for the Northern District of West Virginia did not have jurisdiction to compel such depositions either because its jurisdiction stemmed from

the state law due to the removal.

## CONCLUSIONS OF LAW

### I.    General Conclusions of Law

1.    In the interest of efficient and effective resolution of cases, the West Virginia Supreme Court of Appeals has recognized that when there is no real dispute as to the facts or law in a case, summary judgment is a useful mechanism to resolve the controversy. Johnson v. Mays, 191 W. Va. 628, 630, 447 S.E.2d 563, 565 (*per curiam*) (1994).

2.    The party moving for summary judgment has the initial burden of production and persuasion. Williams v. Precision Coil, 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995). However:

> if the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the non-moving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f).

Id. at syl. pt. 3.

The non-moving party, in relation to (1) and (2), must show more than a "scintilla of evidence" to support his or her claim. Id. at 60. To defeat the motion, the non-moving party must present sufficient evidence for a reasonable jury to decide in the non-moving party's favor. Id. at 60 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

3.    Further:

> In ruling on a motion for summary judgment, the judge must review the evidence through the prism of the substantive evidentiary burden. . . . The question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the

Civil Action No. 14-C-30

quality and quantity of evidence required by the governing law *or* that he did not.

Anderson, 477 U.S. at 254.

4.      This case was previously litigated by the parties in the Circuit Court of Harrison County, West Virginia as Civil Action No. 12-C-323-3. That case was not decided on its merits and, therefore, the doctrines of collateral estoppel and res judicata do not apply. However, the parties did have the opportunity to fully engage in discovery and were prepared to try the case.

5.      The Plaintiffs do not specifically raise the issue of West Virginia Rule of Civil Procedure 56(f) as a defense. However, in their response to the motion for summary judgment, they do raise the issue that Paul Kelley's doctors at the VA have not been deposed. The VA has previously indicated that it will not voluntarily allow its doctors to be deposed and successfully sought intervention by the United States District Court for the Northern District of West Virginia to prevent such depositions. Absent an order by the United States District Court for the Northern District of West Virginia, it is concluded that the Plaintiffs cannot depose the VA doctors. Given that the Plaintiffs have provided no indication that they seek to secure such order, their assertion that they have not deposed the doctors is without merit.

6.      Further, based upon the previous discovery in Circuit Court of Harrison County Civil Action No. 12-C-323-3, West Virginia Rule of Civil Procedure 56(f) is not applicable.

**II.     Conclusions of Law as to the competency of Paul Kelley to execute his Last Will and Testament**

7.      The mental capacity required for the creation of a last will and testament is not high; it is lower than the capacity necessary to execute a deed. Hess v. IOOF Tygart Valley Lodge No. 6, 180 W. Va. 319, 324, 376 S.E.2d 333, 337 (1988). ("Less mental capacity is

necessary to make a will than a deed." (citing <u>Kerr v. Lunsford</u>, 31 W. Va. 659, 8 S.E. 493, syl. pt. 16 (1888)).

8.　Further:

It is not necessary that a testator possess high quality or strength of mind, to make a valid will, nor that he then have as strong mind as he formerly had. The mind may be debilitated, the memory enfeebled, the understanding weak, the character may be peculiar and eccentric, and he may even want capacity to transact many of the business affairs of life; still it is sufficient if he understands the nature of the business in which he is engaged and when making a will, has a recollection of the property he means to dispose of, the object or objects of his bounty, and how he wishes to dispose of his property.

<u>Milhoan v. Koenig</u>, 196 W. Va. 163, 166, 469 S.E.2d 99, 102 (1996).

9.　The Defendant has the burden of proof as to Paul Kelley's mental capacity. <u>Hess v. Arbogast</u>, 180 W. Va. 319, 323, 376 S.E.2d 333, 337 (1988).

10.　The Plaintiffs have presented no genuine issue of material fact as to the competency of Paul Kelley to enter into his Last Will and Testament.

11.　To support Paul Kelley's competency to enter into his Last Will and Testament, the Defendant provided an affidavit of James C. West, Jr., the attorney who prepared the will.

12.　"The testimony of an attending physician or the lawyer who drafted the will is entitled to great weight on the question of mental capacity." <u>Floyd v. Floyd</u>, 148 W. Va. 183, 196, 133 S.E.2d 726, 734 (1963).

13.　Mr. West's affidavit is persuasive due to the fact that he was Paul Kelley's neighbor, had previously provided him with legal services, and Paul Kelley called him to come meet with him.

14.　Further, Mr. West's affidavit clearly indicates that he did not have any concerns

regarding Paul Kelley's competency. As the preparing attorney, Mr. West's testimony is entitled to great weight.

15. Plaintiff Sharon George's presence during the first part of a meeting between Mr. West and Paul Kelley also reinforces Paul Kelley's competency. Plaintiff Sharon George's testimony that her father asked Mr. West how he could put Jeannie[2] on his will establishes that Paul Kelley wanted to add the Defendant to his will.

16. One of the key factors in determining whether a testator is competent to enter into a last will and testament is whether he is able to determine the objects of his bounty. Milhoan v. Koenig, 196 W. Va. 163, 166, 469 S.E.2d 99, 102 (1996).

17. Paul Kelley knew who his children were. In their depositions, Plaintiffs Sharon George, Robert Kelley, and Delores Stutler all testified that their father always knew who they were and knew who his children were. The other Plaintiffs did not offer any contradictory testimony.

18. The Defendant has offered clear evidence that Paul Kelley knew who the objects of his bounty were.

19. The Plaintiffs have not offered any evidence that Paul Kelley did not know who his children were or who Norma Kelley was.

20. Another key factor in determining competency was whether the testator had a recollection of the property that he wished to dispose of. Milhoan v. Koenig, 196 W. Va. 163, 166, 469 S.E.2d 99, 102 (1996).

---

[2] Jeannie being Paul Kelley's name for the Defendant Norma Jean Kelley.

Civil Action No. 14-C-30

21. Until near the time of his death, Paul Kelley knew that he owned his welding shop and intended to sell it, as testified to by Plaintiffs Delores Stutler, Wilma Jones, and Sharon George.

22. Through the submission of such testimony, the Defendant provided evidence that Paul Kelley knew of some or all of his assets years after he executed his Last Will and Testament.

23. The Plaintiffs have provided no evidence that Paul Kelley did not know what property he meant to dispose of.

24. The final key factor is whether the testator knew how he wished to dispose of his property.

25. The Defendant has presented evidence that Paul Kelley knew that he wanted to leave his assets to the Defendant. Specifically, she has presented an affidavit from the preparing attorney and has presented testimony from Plaintiff Sharon George that Paul Kelley intended to add the Defendant to his Last Will and Testament.

26. The Plaintiffs have admitted that other than Plaintiff Sharon George's testimony that Paul Kelley wanted to add the Defendant to his Last Will and Testament, they never spoke with him regarding his plans for his estate.

27. The Plaintiffs have not provided sufficient evidence to create a question of fact as to whether Paul Kelley knew that he was leaving his assets to the Defendant.

28. The Plaintiffs have identified one medical record dated May 7, 2008, indicating that Norma Swiger [Kelley] was Paul Kelley's fiancee. This medical record does not create a

Civil Action No. 14-C-30

question of fact as to whether Paul Kelley was competent because there is no evidence that Paul Kelley was the source of this information as opposed to historic information contained in the VA's computer system. Further, medical records from May 19 and June 15, 2008 clearly list Norma Kelley as Paul Kelley's spouse.

29. The Plaintiffs also rely upon a June 15, 2008 medical record indicating that Paul Kelley was disoriented when he came into the VA emergency room. First, the medical record was created almost three months after Paul Kelley executed his Last Will and Testament. Second, the medical record provides no indication that such disorientation was ongoing. In fact, that medical record also indicates that Paul Kelley's neurological status as alert and oriented. Further, less than two hours after he was admitted to the VA emergency room, Paul Kelley was discharged and the doctor notes indicate that he was able to verbalize and describe his symptoms and his presiding doctor, Dr. Clara Wang-Liang, allowed him to go home based upon his own decision. At most, the cited medical record is evidence that at some point on June 15, 2008, Paul Kelley was disoriented, but such disorientation did not last past his approximately two hour emergency room stay.

30. The other medical records provided by the Plaintiffs are not removed from the relevant time period. The next record provided to the Court was created on February 25, 2009, almost a year after Paul Kelley executed his Last Will and Testament. Such record has no relevancy to Paul Kelley's competency on March 26, 2008.

31. The Defendant has provided numerous medical records from the first half of 2008. Nowhere in those records is there an indication that Paul Kelley is incompetent or has

Civil Action No. 14-C-30

such a mental deficiency that he did not have the requisite mental capacity to execute his Last Will and Testament.

32.     The closest medical record to March 26, 2008, appears to be the informed consent that Paul Kelley gave on March 11, 2008. The VA specifically allowed Paul Kelley to give informed consent to take a treadmill stress test on March 11, 2008, two weeks before he executed his Last Will and Testament. The record is a form document that allows for the VA to indicate that the patient has decision-making capacity. The VA, in the March 11, 2008 record, indicated that Paul Kelley had decision-making capacity.

33.     The medical records provided by the Defendant, and especially the March 11, 2008 record, provide clear evidence that Paul Kelley was competent to execute his Last Will and Testament on March 26, 2008.

34.     The Plaintiffs have not provided any medical records that would rebut the records provided by the Defendant or otherwise raise a question of fact as to Paul Kelley's competency.

35.     The Plaintiffs have also relied upon the assertion that Paul Kelley could not read or write. They have provided no evidence of this other than Robert Kelley's verification of the representations contained in their response to the motion for summary judgment.

36.     Even assuming that Paul Kelley could not read or write, without further evidence, such fact does not create a genuine question of material fact.

37.     "[I]t may be said that the great and prevailing weight of authority is that, where a will is executed according to the prescribed legal formalities, it will be presumed, in the absence of evidence to the contrary, that the testator read it, or otherwise became acquainted with its

provisions." Bailey v. Bee, 73 W. Va. 286, 80 S.E. 454, 456 (1913); see also Sedlock v. Moyle, 222 W. Va. 547, 551, 668 S.E.2d 176 180 (2008).

38. The Plaintiffs have presented no evidence or allegations that Paul Kelley's Last Will and Testament was not properly executed in terms of signing in front of witnesses.

39. Further, the preparing attorney provided an affidavit stating that:

It is my belief that both at the time Mr. Kelley told me what he wanted his will to contain and the will was executed on March 26, 2008 Mr. Kelley was fully aware of the property and property interests which he owned and knowingly made his wife Norma Jean Kelley the sole beneficiary of his will.

See Exhibit 12 to Def.'s Memo in Support of Summ. J.

40. The Plaintiffs have provided no citation to authority and the Court can find no citation to any authority requiring a testator to be able to read or write in order to enter into and execute a Last Will and Testament.

41. Rather, the testator has to be able to understand that he is making a will and understand how he desires to dispose of his property. Milhoan v. Koenig, 196 W. Va. 163, 166, 469 S.E.2d 99, 102 (1996).

42. Paul Kelley's Last Will and Testament left the entirety of his estate to Norma Kelley. Such disposal of property would be within the understanding of a lay person who could not read.

43. The Plaintiffs did not provide any evidence to rebut the presumption that Paul Kelley became acquainted with the provisions of his Last Will and Testament. Bailey v. Bee, 73 W. Va. 286, 80 S.E. 454, 456 (1913).

44. The Defendant provided evidence, namely the sworn affidavit of the preparing

attorney, that Paul Kelley knew that his Last Will and Testament made Norma Kelley his sole beneficiary.

45.     Additionally, the Defendant provided evidence that Paul Kelley executed numerous legal documents since 1988. As discussed in the Court's Findings of Fact, a number of these legal documents were deeds conveying real property to Paul Kelley's children or grandchildren. The Plaintiffs have raised no argument or evidence that any of those transactions were improper or that their father was unable to enter into those transactions. Even assuming that the Plaintiffs' allegation that Paul Kelley could not read or write is accurate, it is concluded as a matter of law that he was otherwise able to execute deeds, oil and gas leases, and other agreements and in fact did so on numerous occasions.

46.     Based upon the presumption that Paul Kelley was familiar with the terms of his Last Will and Testament, the Plaintiffs' lack of evidence to the contrary, and the Defendant's evidence supporting such conclusion, the Court finds that Paul Kelley was familiar with the terms of his Last Will and Testament and the fact that through it he bequeathed and devised the entirety of his estate to the Defendant.

47.     In Mullens v. Lilly, the Supreme Court of Appeals of West Virginia dealt with a challenge to a number of deeds executed by a deceased based upon lack of competency and undue influence. 123 W. Va. 182, 184, 13 S.E.2d 634, 636 (1941). In that case, two of the witnesses who asserted lack of competency and undue influence had engaged in business transactions with the deceased in relation to the challenged deeds. The Court found that "[t]he opinions of these witnesses are entitled to little weight in view of the fact that they were

Civil Action No. 14-C-30

themselves willing to enter into important business transactions with the decedent." Id. at 192, 13 S.E.2d at 640.

48. Additionally, in Mullens, several of the plaintiffs themselves had transactions with the deceased. Id. at 194, 13 S.E.2d at 640. The existence of the transactions was "not decisive of the case," but they did "weaken plaintiffs' position on the question of mental capacity." Id.

49. Plaintiff Robert Kelley entered into an installment sales contract with Paul Kelley in March 2012, two months before Paul Kelley died and four years after Paul Kelley executed his Last Will and Testament.

50. Per that installment sales contract, Plaintiff Robert Kelley and two of his sons' would pay Paul Kelley $50,000 up front and $25,000 within one year in exchange for the conveyance of Paul Kelley's welding shop. Per the agreement, Paul Kelley conveyed the welding shop to them on March 16, 2012.

51. Neither the Plaintiffs nor the Defendant has challenged this agreement or Paul Kelley's conveyance of the welding shop.

52. Plaintiff Robert Kelley verified the Complaint. He is the only one of the Plaintiffs to submit any verification or sworn testimony on behalf of the Plaintiffs' case.

53. Due to Plaintiff Robert Kelley's business transaction with Paul Kelley four years after the execution of Paul Kelley's Last Will and Testament, Plaintiff Robert Kelley's testimony and verification that Paul Kelley lacked competency to enter into his Last Will and Testament is entitled to little weight.

54. The Plaintiffs have provided no medical evidence of Paul Kelley's mental condition on or near March 26, 2008. Further, they have not identified any part of their own testimony that provides any evidence that their father lacked competency at that point in time. In fact, their testimony supports the conclusions that their father was competent to enter into his Last Will and Testament given that Plaintiff Sharon George testified that Paul Kelley wanted to change his will and several of the Plaintiffs testified that their father knew who they were and knew about his welding shop.

55. The Court concludes that there is no genuine issue of material fact as to Paul Kelley's competency to execute his Last Will and Testament dated March 26, 2008 and concludes that the Defendant has established as a matter of law that Paul Kelley had the requisite competency.

**III. Conclusions of Law as to whether Paul Kelley's Last Will and Testament was the product of undue influence.**

56. Undue influence is the improper use of power or trust in a way that deprives a person of free will and substitutes another's objective. Mullens v. Lilly, 123 W. Va. 182, 13 S.E.2d 634, 641 (1941). Undue influence must amount to such force and coercion as to destroy the free agency of the mind, although such force need not be physical. Id. "In an action to impeach a will the burden of proving undue influence is upon the party who alleges it and mere suspicion, conjecture, possibility or guess that undue influence has been exercised is not sufficient to support a verdict which impeaches the will upon that ground." Milhoan v. Koenig, 196 W. Va. 163, 164, 469 S.E.2d 99, 100, syl. pt. 3 (1996) (quoting Frye v. Norton, 148 W. Va. 500, 135 S.E.2d 603, syl. pt. 5 (1964). "Undue influence cannot be based on suspicion,

possibility or guess that such undue influence had been exercised, but must be proved and the burden of proof of such issue rests on the party alleging it." Gale v. Napier, 186 W. Va. 244, 245, 412 S.E.2d 242, 243, syl. pt. 2 (1991) (quoting Floyd v. Floyd, 148 W. Va. 183, 133 S.E.2d 726, syl. pt. 7 (1963)).

57.     Love does not create grounds for undue influence:

> The influence resulting from attachment or love, or mere desire of gratifying the wishes of another, if free agency is not impaired, does not affect a will. The influence must amount to force or coercion destroying free agency. It must not be the influence of affection or attachment. It must not be mere desire of gratifying the wishes of another, as that would be strong ground to support the will. Further, there must be proof that it was obtained by this coercion, by importunity that could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear.

James v. Knotts, 227 W. Va. 65, 68, 705 S.E.2d 572, 575 (2010) (quoting Stewart v. Lyons, 54 W.Va. 665, 47 S.E. 442, syl. pt. 6 (1903)).

58.     The Plaintiffs carry the burden of proof as to their claim of undue influence. McMechen v. McMechen, 17 W. Va. 683, 684 (1881).

59.     Plaintiff Sharon George's cited evidence of undue influence in her deposition was that the Defendant would tell Paul Kelley that she did not want anything and that the Defendant just wanted his love.

60.     Plaintiff Delores Stutler's testimony regarding undue influence was similar. Per her testimony, undue influence existed because the Defendant would refer to Paul Kelley as honey, darling, and sweetheart.

61.     Such evidence of undue influence is not actually evidence of undue influence. "Suggestion and advice, addressed to the judgment, are not undue influence. Nor is a deed

Civil Action No. 14-C-30

induced by an appeal on the score of gratitude, past kindness, or love or esteem the result of undue influence." Delaplain v. Grubb, 44 W. Va. 612, 30 S.E. 201 (1898).

62. The other Plaintiffs admitted that they did not have any evidence supporting undue influence. In fact, Plaintiff Wilma Jones admitted that their father loved the Defendant.

63. As the Plaintiffs carry the burden as to their undue influence claim, they must bring forth sufficient evidence to raise a genuine issue of material fact as to the existence of undue influence in relation to the procurement of the Last Will and Testament of Paul Kelley. They have failed to do this and, therefore, the Court concludes that there is no genuine issue of material fact as to the Plaintiffs' undue influence claim and, as a matter of law, the Last Will and Testament of Paul Kelley was free from undue influence.

64. "To warrant a finding of undue influence which is based on circumstantial evidence the established facts must be inconsistent with any theory other than that of undue influence." Ritz v. Kingdon, 139 W. Va. 189, 192, 79 S.E.2d 123, 126, syl. pt. 19 (1953) (overruled on other grounds by a State v. Bragg, 140 W. Va. 585, 87 S.E.2d 689 (1955); holding modified by Lawyer Disciplinary Bd. v. Ball, 219 W. Va. 296, 633 S.E.2d 241 (2006)).

65. In this case, there is another theory that is consistent with a theory other than undue influence. Paul Kelley was married to the Defendant. Per Plaintiff Wilma Jones, he loved the Defendant. The theory that Paul Kelley would provide for his wife who he loved in his Last Will and Testament is a reasonable theory supported by the evidence and inconsistent with a theory of undue influence.

66. Such inconsistent theory further supports the conclusion of law that there is no

Civil Action No. 14-C-30

genuine issue of material fact as to the Plaintiffs' undue influence claim and, as a matter of law, the Last Will and Testament of Paul Kelley was free from undue influence.

**IV.     Conclusions of Law as to whether Paul Kelley's Last Will and Testament was a result of tortious interference.**

67.     The elements to establish tortious interference with business relations are straightforward: "a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Torbett v. Wheeling Dollar Sav. & Trust Co., 173 W. Va. 210, 211, 314 S.E.2d 166, 167 (1983).

68.     Such a claim applies to tortious interference with a testamentary bequest. See Barone v. Barone, 170 W. Va. 407, 411, 294 S.E.2d 260, 264 (1982).

69.     To the extent that the Plaintiffs have asserted that Paul Kelley disinherited them, as a matter of law, they were not entitled to any inheritance.  "A competent and free testator has the undoubted right to dispose of his property in any manner and to whomsoever he pleases." Nicholas v. Kershner, 20 W. Va. 251, 257 (1882).  Such claim of disinheritance does not relate to their claim of tortious interference.

70.     To prevail on their tortious interference claim, the Plaintiffs would have to establish that they had some expectancy of receiving from Paul Kelley's estate.  Given that Paul Kelley was free to do with his estate as he pleased, the Plaintiffs have to have evidence other than the fact that they are the children of Paul Kelley, as such relationship entitles them to nothing under the law if Paul Kelley so desires.

71.     The Plaintiffs have not provided any evidence of the existence of a contractual or

business relationship or expectancy. They have not provided any former will of Paul Kelley. They have not provided any testimony or evidence that Paul Kelley intended to provide for them in his will or for them to have part of his estate. In fact, they admit that they did not even speak with Paul Kelley regarding his Last Will and Testament, with the exception of Plaintiff Sharon George's testimony that Paul Kelley wanted to add the Defendant to his Last Will and Testament.

72.    To prevail on their claim of tortious interference, the Plaintiffs must establish an expectancy of a testamentary bequest. As previously stated, the Plaintiffs have not provided any previous Last Will and Testament of Paul Kelley or any evidence that he intended or desired to leave them any part of his estate.

73.    The Plaintiffs have not provided any evidence that the Defendant intentionally interfered with their expectancy of a testamentary bequest. The Plaintiffs have provided no evidence to tie the Defendant to Paul Kelley's Last Will and Testament. In fact, Plaintiff Sharon George testified that she heard her father tell James C. West, Jr. that he wanted to add the Defendant to his will.

74.    The Plaintiffs have not provided any evidence that establishes a genuine issue of material fact as to any of the elements of tortious interference. Therefore, the Court concludes that as a matter of law, the Defendant did not tortiously interfere with Paul Kelley's Last Will and Testament.

**V.    Conclusions of Law as to fraud by the Defendant.**

75.    To establish fraud, the Plaintiffs must establish the following elements by clear and convincing evidence: "(1) that the act claimed to be fraudulent was the act of the defendant

Civil Action No. 14-C-30

or induced by [her]; (2) that it was material and false; that [Paul Kelley] relied on it and was justified under the circumstances in relying upon it; and (3) that [the Plaintiffs] were damaged because [Paul Kelley] relied on it." Muzelak v. King Chevrolet, Inc., 179 W. Va. 340, 341, 368 S.E.2d 710, 711 (1988) (citing Lengyel v. Lint, 167 W. Va. 272, 280 S.E.2d 66, syl. pt. 1 (1981)).

76. In their Complaint, the Plaintiffs do not set forth any factual allegations that would support a claim for fraud under the particularity requirements for fraud claims per West Virginia Rule of Civil Procedure 9(b).

77. The Plaintiffs have not provided any evidence as to any act by the Defendant, or that any act by her was material and false, or that Paul Kelley relied upon any act by the Defendant.

78. The Plaintiffs carry the burden of proof as to their fraud clam.

79. The Plaintiffs have not raised a genuine issue of material fact as to their claim for fraud and, therefore, the Court concludes that their fraud claim fails as a matter of law.

**VI. Conclusions of Law as to the April 2012 deeds**

80. The Plaintiffs have alleged that Paul Kelley did not have the requisite competency to execute the April 2012 deeds that conveyed certain oil and gas interests to the Defendants or that such deeds were procured via undue influence.

81. As the Court discussed during the hearing on this matter, Plaintiff Robert Kelley's business transaction with Paul Kelley in March 2012 raises questions as to the legitimacy of the Plaintiffs' claims as to the April 2012 deeds. This is especially true given that Paul Kelley signed a deed conveying property to Plaintiff Robert Kelley approximately two weeks before he signed

Civil Action No. 14-C-30

the challenged deeds.

82. Other than that evidence, the Defendant has not brought forth any evidence related to Paul Kelley's competency when he executed the April 2012 deeds.

83. In their Complaint, the Plaintiffs ask that the Court set aside the April 2012 Deeds.

84. Neither party has provided any citation to caselaw or statute that indicates what occurs if the April 2012 deeds are set aside. After review, the Court cannot located any caselaw or statute resolving that issue either.

85. The Court concludes that if the April 2012 Deeds are set aside, per the Plaintiffs' request, the property conveyed by those deeds would revert to Paul Kelley's estate.

86. "One of the strongest presumptions in connection with the construing of wills is that the law does not favor intestacy." Rastle v. Gamsjager, 151 W. Va. 499, 505, 153 S.E.2d 403, 406 (1967).

87. Based upon the general rule that the law does not favor intestacy, the Court concludes that if the April 2012 deeds were set aside, the property conveyed therein would pass via Paul Kelley's Last Will and Testament.

88. Per his Last Will and Testament, Paul Kelley left the entirety of his estate to the Defendant.

89. Therefore, if the Court set aside the April 2012 deeds, then the Defendant would still own the property conveyed therein via the terms of Paul Kelley's Last Will and Testament.

90. "Whether a case has been rendered moot depends upon an examination of the

Civil Action No. 14-C-30

particular facts of a case. Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." State ex rel. Bluestone Coal Corp. v. Mazzone, 226 W. Va. 148, 155, 697 S.E.2d 740, 747 (2010) (citing Powell v. McCormack, 395 U.S. 486, 496, (1969) (internal citation omitted). "Thus, mootness may occur when the circumstances of the case change during the course of its pendency." Id.

91.     The Defendant, as the party asserting mootness, carries a heavy burden of persuasion. Id.

92.     The Defendant has met her burden of persuasion as to the mootness of the issue of the enforceability of the April 2012 Deeds. As a matter of law, the Plaintiffs' claims as to Paul Kelley's Last Will and Testament fail. Therefore, his Last Will and Testament controls and the real property conveyed by the April 2012 Deeds is owned by the Defendant, either via the will or the deeds.

93.     The case as it relates to the April 2012 is moot because the Plaintiffs have no interest in the outcome of the issue of whether the April 2012 Deeds are the product of undue influence or executed with the appropriate competency.

94.     The Plaintiffs also cannot establish standing in relation to the April 2012 Deeds.

95.     To establish standing:

First, the party, the plaintiffs herein, must have suffered an "injury-in-fact:"-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Coleman v. Sopher, 194 W. Va. 90, 96, 459 S.E.2d 367, 373, 1995 WL 361799 (1995).

Civil Action No. 14-C-30

96.     In this case, due to the conclusion of law that Paul Kelley's Last Will and Testament is enforceable, the Plaintiffs have suffered no injury-in-fact as a result of the April 2012 Deeds. The Plaintiffs have suffered no injury-in-fact because even if the April 2012 Deeds are invalid, the Plaintiffs would not receive any portion of the property described therein.

97.     Based upon the conclusion that the claims are moot and the Plaintiffs have no standing to assert such claims, the Court concludes as a matter of law that the Plaintiffs' claims related to the April 2012 Deeds executed by Paul Kelley should be dismissed.

Based upon the Findings of Fact and Conclusions of Law contained herein, the Court holds that the Defendant's Motion for Summary Judgment should be and is hereby GRANTED.

It is ORDERED that the Plaintiffs' claims of lack of competency, undue influence, tortious interference, and fraud as to the procurement and execution of Paul Kelley's Last Will and Testament are hereby DISMISSED WITH PREJUDICE on the basis that the Plaintiffs have not established a genuine issue of material fact as to any of those claims and that the Court hereby finds that as a matter of law, such claims fail.

It is further ORDERED that the Last Will and Testament of Paul Kelley shall continue to be probated and the Defendant Norma Kelley shall continue in her role as executrix and finalize and distribute the Estate of Paul Kelley pursuant to the terms of such will.

It is further ORDERED that the Plaintiffs' claims of lack of competency, undue influence, tortious interference, and fraud as to the procurement and execution of the April 2012 Deeds are hereby DISMISSED WITH PREJUDICE on the basis that the Plaintiffs have no standing to bring such claims and such claims are moot.

Civil Action No. 14-C-30

The Plaintiffs' objections to this Order are noted and are reserved for appeal purposes.

The Defendant's objection as to the non-adoption of any heightened standard and policy argument is noted and is reserved for appeal purposes.

Enter: _____2/4/15_____

_____
Honorable Alan D. Moats

Prepared by:

_____
Richard R. Marsh (WV State Bar #10877)

A TRUE COPY FROM THE RECORD
ATTEST:___VONDA M. RENEMAN___
CLERK OF THE CIRCUIT COURT OF TAYLOR
COUNTY, WEST VIRGINIA
BY:_____, Deputy