IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

_____

No. 17-0228

_____

FILED

**October 12, 2017**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.,
PATRICK MORRISEY,
ATTORNEY GENERAL,
Respondent

v.

COPPER BEECH TOWNHOME COMMUNITIES
TWENTY-SIX, LLC, et al.,
Petitioner

_____

Certified Question from the Circuit Court of Kanawha County
The Honorable Jennifer F. Bailey, Judge
Civil Action No. 15-C-1699

CERTIFIED QUESTION ANSWERED

_____

Submitted: October 3, 2017
Filed: October 12, 2017

M. David Griffith, Jr., Esq.                    Patrick Morrisey, Esq.
Joseph K. Merical, Esq.                          Attorney General
Thomas Combs & Spann, PLLC              Thomas M. Johnson, Jr., Esq.
Charleston, West Virginia                       Deputy Solicitor General
Counsel for the Petitioner                      Erica N. Peterson, Esq.
                                                              Assistant Attorney General
                                                              Charleston, West Virginia
                                                              Counsel for the Respondent

W. Bradley Sorrells, Esq.
Robinson & McElwee, PLLC
Charleston, West Virginia
Counsel for Amicus Curiae
The West Virginia Association
of Realtors, Inc.

Marc E. Williams, Esq.
Randy L. Saunders, Esq.
Alexander L. Turner, Esq.
Nelson Mullins Riley & Scarborough, LLP
Huntington, West Virginia
Counsel for Amicus Curiae
The Defense Trial Counsel of West Virginia

Samuel H. Simon, Esq.
Matthew J. Lautman, Esq.
Houston Harbaugh, P.C.
Pittsburgh, Pennsylvania
Counsel for Amicus Curiae
North Central West Virginia
Landlords Association, Inc. d/b/a
North Central West Virginia
Business Owners Association

Matthew A. Jividen, Esq.
Paul R. Sheridan, Esq.
Legal Aid of West Virginia
Martinsburg, West Virginia
Counsel for Amicus Curiae
Legal Aid of West Virginia

John R. Teare, Jr., Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Amicus Curiae
The West Virginia Housing
Institute, Inc.

Mark A. Kepple, Esq.
Bailey & Wyant, PLLC
Wheeling, West Virginia
Counsel for Amicus Curiae
Metro Property Management

Marjorie Anne McDiarmid, Esq.
WVU Litigation & Advocacy Clinic
Carrie Ann Showalter, Esq.
WVU Student Legal Services
Morgantown, West Virginia
Counsel for Amici Curiae
WVU Litigation & Advocacy Clinic and
WVU Student Legal Services

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "It is not for this Court arbitrarily to read into a statute that which it does not say.  Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syllabus Point 11, *Brooke B. v. Ray*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

2.     The debt collection provisions, W.Va. Code §§ 46A-2-122 to -129a [1996], and deceptive practices provisions, W.Va. Code §§ 46A-6-101 to -106 [2015], both contained in the West Virginia Consumer Credit and Protection Act, do not apply to and regulate the fees a landlord may charge to a tenant pursuant to a lease of residential real property.

Justice Ketchum:

In this matter we address whether our consumer credit protection statute applies to and regulates the relationship between a landlord and tenant under a lease for residential real property. The Circuit Court of Kanawha County certified a question to this Court to resolve this issue.

After thorough review, we find that our consumer credit protection statute does not regulate the residential rental fees a landlord may charge pursuant to a residential lease. We therefore answer the certified question in the negative.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts of this matter are brief and undisputed. In September 2015, the Attorney General of West Virginia ("Attorney General"), acting on behalf of the State,[1] filed a civil action in the Circuit Court of Kanawha County against a landlord, Copper Beech Townhome Communities Twenty-Six, LLC ("Defendant Landlord").[2]

---

[1] The Legislature has granted to the Attorney General the authority to bring civil actions to enforce our Consumer Credit and Protection Act. *See* W.Va. Code § 46A-7-108 [1974] ("The attorney general may bring a civil action to restrain a person from violating this chapter and for other appropriate relief").

[2] The Attorney General's complaint names Copper Beech Townhome Communities Twenty-Six, LLC and Copper Beech Townhome Communities Twenty-Six SPE, LLC as defendants. As noted in Copper Beech's brief, these two defendants "are separate legal entities, [however] this separate identity is not material for purposes of this

(Continued . . .)

1

Defendant Landlord is one of the largest residential lessors in the state. It maintains a number of rental units in Morgantown, West Virginia.

The Attorney General's complaint alleged that Defendant Landlord's residential leases included various fees and charges that violated the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-1-101 *et seq.* [1974] ("CCPA"). According to the Attorney General, the fees contained in Defendant Landlord's leases that violate the CCPA include: 1) a non-refundable redecorating fee, 2) debt collection fees, 3) attorney's fees, 4) dishonored check fees, 5) multiple check fees when co-tenants pay rent with more than one check, 6) a fee for written receipts, and 7) a fee for late payment of monthly rent. The Attorney General's complaint alleged that these fees violated two main provisions of the CCPA: 1) the debt collection provisions as set forth in W.Va. Code §§ 46A-2-122 to -129a, and 2) the unfair and deceptive acts and practices provisions contained in W.Va. Code §§ 46A-6-101 to -106. The Attorney General's complaint sought an "injunction, consumer restitution, disgorgement, civil penalties, and other appropriate relief."

Defendant Landlord filed a motion to dismiss the Attorney General's complaint, arguing that the CCPA does not apply to residential leases. After the circuit court denied this motion, Defendant Landlord moved the circuit court to certify a

---

certified question." For ease of the reader, we refer to these two named defendants collectively as "Defendant Landlord."

2

question to this Court regarding the application of the CCPA to residential leases of real property. On March 8, 2017, the circuit court certified the following question to this Court: "Does the West Virginia Consumer Credit and Protection Act (including W.Va. Code §§ 46A-2-122 to -129a and §§ 46A-6-101 to -106) apply to the relationship between a landlord and tenant under a lease for residential rental property?"[3] Thereafter, this Court accepted the certified question.[4]

## II. STANDARD OF REVIEW

As this Court recognized in Syllabus Point 1 of *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Applying this plenary standard of review, we proceed to address the certified question.

## III. ANALYSIS

Before addressing the specific certified question, we begin with a brief background discussion of the CCPA. It was "enacted in 1974 and is a hybrid of the Uniform Consumer Credit Code and the National Consumer Act and some sections from then-existing West Virginia law." *White v. Wyeth*, 227 W.Va. 131, 136, 705 S.E.2d 828,

[3] The circuit court answered this question "Yes."

[4] We acknowledge the contribution of the numerous amici curiae briefs filed with this Court. We value their contributions to this case and have considered their briefs in conjunction with the parties' arguments.

833 (2010) (internal citation omitted). This Court has observed that the purpose underlying the CCPA is as follows: "We have recognized the dual legislative purposes of protecting consumers and promoting sound and fair business practices." *Id.*, 227 W.Va. at 139, 705 S.E.2d at 836. Further, this Court has stated that the CCPA "is a comprehensive attempt on the part of the West Virginia legislature to extend protection to consumers and persons who obtain credit in state." *Harper v. Jackson Hewitt, Inc.*, 227 W.Va. 142, 151, 706 S.E.2d 63, 72 (2010).

Additionally, the purpose of the CCPA was described in an excellent law review article by WVU Law School Professor Vincent Cardi[5] wherein he stated:

> The West Virginia Consumer Credit and Protection Act is intended to: (1) increase the availability of consumer credit by raising allowable finance charges (interest rates) and move toward equalization of rates available to consumers whether they borrow the money from a lender or buy the goods on credit from a seller; (2) regulate the rate of finance charges allowed for consumer credit transactions by prescribing rates and rules for computation; (3) regulate those businesses which make small consumer loans and which were formerly regulated by the small loan act; (4) protect consumers who purchase goods or services on credit or through consumer loans from deceptive selling techniques, unconscionable contract terms, and undesirable debt recovery and collection practices; and (5) protect consumers who purchase goods or services for cash or credit from, and to

---

[5] This Court has noted that Professor Cardi is the "foremost expert in this area of the law[.]" *State ex rel. McGraw v. Bear, Stearns & Co., Inc.*, 217 W.Va. 573, 577, 618 S.E.2d 582, 586 (2005).

4

give them remedies for, defective or shoddy goods and services and unfair and deceptive selling practices.

V. Cardi, *The West Virginia Consumer Credit and Protection Act*, 77 W.Va. L. Rev. 401, 402 (1974-75).

In researching the background and purpose underlying the CCPA, we have found no reported West Virginia cases, law review articles, or secondary sources stating that the purpose, or even a purpose, of the Act is to regulate fees that a landlord may charge to a tenant pursuant to a residential lease. In fact, in the forty-three years since the CCPA was enacted, this case is the first occasion in which any party has asserted before this Court that the Act applies to and regulates the landlord-tenant relationship.

With this background in mind, we turn to the specific certified question before us: "Does the West Virginia Consumer Credit and Protection Act (including W.Va. Code §§ 46A-2-122 to -129a and §§ 46A-6-101 to -106) apply to the relationship between a landlord and tenant under a lease for residential rental property?" As highlighted by the circuit court in its formulation of the certified question, our resolution of this matter requires us to examine two statutory sections contained in the CCPA: the debt collection provisions contained in W.Va. Code §§ 46A-2-122 to -129a, and the unfair or deceptive acts or practices provisions contained in W.Va. Code §§ 46A-6-101 to -106.

The Attorney General asserts that we should answer the certified question in the affirmative and conclude that the CCPA applies to a residential lease entered into by a landlord and tenant. According to the Attorney General, the CCPA was written to

5

"broadly [and] unambiguously apply to many different categories of people . . . including landlords." Further, regarding the specific statutory sections at issue, the Attorney General asserts:

> Under the plain meaning of the debt collection provisions, a tenant is a consumer, a landlord is a debt collector, and the tenant's obligation to pay charges and fees to the landlord constitutes a debt. Accordingly, a landlord is prohibited from using unfair and unconscionable means in order to collect any debt owed. Under the unfair or deceptive acts or practices provisions, a landlord engages in a trade or commerce and is prohibited from using unfair or deceptive acts or practices.

By contrast, Defendant Landlord argues that neither the debt collection provisions, nor the deceptive practices provisions of the Act apply to residential leases. Defendant Landlord asserts that the CCPA is "designed to prohibit creditors from taking advantage of consumers in various transactions."[6] A landlord's business of renting residential property to a tenant is not the type of conduct regulated by the CCPA according to Defendant Landlord. Instead, "residential leases are already subject to extensive statutory and regulatory oversight . . . and the specific fees [the Attorney General] takes issue with are already addressed by other statutes."[7] Stated simply, Defendant Landlord asserts that the CCPA was not written or designed to apply to the

---

[6] For ease of the reader, the arguments contained in the numerous amici briefs arguing against the Attorney General's position are attributed to "Defendant Landlord."

[7] We discuss these statutes later in our analysis. *See infra* III. A.

6

landlord-tenant relationship. Defendant Landlord notes that "in the forty-two years since it was adopted, the [CCPA] has not been treated as applying to residential-landlord-tenant relationships." Finally, Defendant Landlord argues that the Attorney General's position, if adopted, "would inject uncertainty and instability into the West Virginia residential rental market."

We begin our analysis of the CCPA with a review of our rules of statutory construction. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal

7

quotations and citation omitted). With these rules of statutory construction in mind, we first turn to the debt collection provisions contained in the CCPA.

## A. Debt Collection Provisions

The debt collection provisions are set forth in article 2 of the CCPA, W.Va. Code §§ 46A-2-122 to -129a. The debt collection provisions state that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect . . . claims[.]" W.Va. Code § 46A-2-127. Additionally, W.Va. Code § 46A-2-128 provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim."

While the CCPA contains a "general definitions" section in article 1, the debt collection provisions in article 2 contain additional definitions specifically for the purposes of debt collection. These specific definitions are set forth in W. Va. Code § 46A-2-122:

> (a) "Consumer" means any natural person obligated or allegedly obligated to pay any debt.
>
> (b) "Claim" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.
>
> (c) "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer.

8

(d) "Debt collector" means any person or organization engaging directly or indirectly in debt collection. The term includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims. The term excludes attorneys representing creditors provided the attorneys are licensed in West Virginia or otherwise authorized to practice law in the State of West Virginia and handling claims and collections in their own name as an employee, partner, member, shareholder or owner of a law firm and not operating a collection agency under the management of a person who is not a licensed attorney.

The issue we must resolve is whether a residential rental fee charged by a landlord, such as a fee for late payment of rent, may be properly characterized as a "claim" under W.Va. Code § 46A-2-122(b).

The Attorney General argues that the broad language used in the foregoing definitions signals the legislature's intent that these debt collection provisions apply to anyone, including a landlord, who attempts to collect a "claim" from a consumer. Further, the Attorney General asserts that "the charges and fees a tenant owes to a landlord constitute claims" under the foregoing definition because a claim is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction." The Attorney General asserts that a tenant is a consumer and that the broad meaning of the word "transaction" extends to residential leases.

Conversely, Defendant Landlord argues that the debt collection provisions do not apply to landlord-tenant relationships. Defendant Landlord emphasizes that residential lease agreements are not specifically addressed in the debt collection

9

provisions. If, as the Attorney General claims, the legislature intended these provisions to apply to residential leases of real property, it would have done so explicitly.

Upon our review, we find that the debt collection provisions in W.Va. Code §§ 46A-2-122 to -129a are reasonably susceptible to differing constructions and that "reasonable minds might be uncertain or disagree as to its intended meaning." *Sizemore*, 202 W.Va. at 596, 505 S.E.2d at 659. As the Attorney General points out, the definition of "claims" is written in a broad manner and includes "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes." W.Va. Code § 46A-2-122(b). On the other hand, the debt collection provisions make no mention of residential leases, landlords, tenants, or include any language signaling that these provisions, though broadly drafted, were intended to cover residential rental fees a landlord may charge. Therefore, we conclude that these provisions are ambiguous.

When faced with an ambiguous statute, this Court has observed "[a] statute that is ambiguous must be construed before it can be applied." Syllabus Point 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "A statute is ambiguous when the statute's language connotes doubtfulness, doubleness of meaning or indistinctness or uncertainty of an expression[.]" *United Services Auto Ass'n*

10

*v. Lucas*, 233 W.Va. 68, 73, 754 S.E.2d 754, 759 (2014) (internal citation and quotation omitted). Similarly, this Court has held that "the initial step in such interpretative inquiry [of a statute] is to ascertain legislative intent." Syllabus Point 1, in part, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). Also, "[w]hen a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction. Absent explicatory legislative history for an ambiguous statute . . . this Court is obligated to consider the . . . overarching design of the statute." *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995).

In attempting to ascertain the legislative intent behind the debt collection provisions, we note that the CCPA is made up of eight distinct articles.[8] We place particular reliance on article 1 of the CCPA which includes a statement setting forth the Act's general "application" and a series of general definitions. Thus, in order to understand the legislative intent of the debt collection provisions contained in the CCPA, we begin by examining article 1. West Virginia Code § 46A-1-104 [1996], entitled "Application," provides as follows:

---

[8] "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

11

(1) This chapter applies if a consumer, who is a resident of this state, is induced to enter into a consumer credit sale made pursuant to a revolving charge account, to enter into a revolving charge account, to enter into a consumer loan made pursuant to a revolving loan account, or to enter into a consumer lease, by personal or mail solicitation, and the goods, services or proceeds are delivered to the consumer in this state, and payment on such account is to be made from this state.

(2) With respect to consumer credit sales or consumer loans consummated in another state, a creditor may not collect in an action brought in this state a sales finance charge or loan finance charge in excess of that permitted by this chapter.

Under this general statement of applicability, three elements need to be satisfied for the CCPA to apply: 1) a creditor 2) induces a consumer 3) to enter into a consumer credit sale, a consumer loan, or a consumer lease. Under article 1's general definitions, a consumer is defined as "a natural person who incurs debt pursuant to a consumer credit sale or a consumer loan, or debt or other obligations pursuant to a consumer lease." W.Va. Code § 46A-1-102(12). A general *lease* of residential real property could not properly be characterized as either a "consumer credit *sale*"[9] or as a

---

[9] We note that the definition of a "consumer credit sale" includes a "sale of . . . an interest in land." "Consumer credit sale" is defined in W.Va. Code § 46A-1-102(13), in relevant part, as follows: "'[C]onsumer credit sale' is a sale of goods, services or an interest in land in which: . . . (iii) The goods, services or interest in land are purchased primarily for a personal, family, household or agricultural purpose[.]" While the definition of "consumer credit sale" includes a *sale* of an interest in land, it does not apply to a general residential lease agreement. According to W.Va. Code § 46A-1-102(42), a "sale of an interest in land" is defined as applying to "a lease in which the
(Continued . . .)

12

"consumer *loan.*" (Emphasis added). The only potential category a residential lease of real property could fit into is a "consumer lease." However, W.Va. Code § 46A-1-102(14)(a) provides that a "consumer lease means *a lease of goods*[.]" (Emphasis added.) Clearly, a residential lease of real property made between a landlord and a tenant is not "a lease of goods."[10]

We emphasize that neither the CCPA's general "application" and definitions contained in article 1, nor the debt collection provisions at issue in article 2, include any indication that the CCPA applies to a residential lease of real property. By contrast, our legislature has enacted extensive, detailed statutory law regulating the landlord-tenant relationship. West Virginia Code §§ 37-6-1 to -30 [1923] provides *explicit* statutory direction on our landlord-tenant law. The title of this section is "Landlord and Tenant." The "Landlord and Tenant" section is contained in the "Real Property" chapter of the West Virginia Code. *See* W.Va. Code §§ 37-1-1 *et seq.* [2008]. Additionally, W.Va. Code §§ 37-6A-1 to -6 [2011], entitled "Residential Rental Security Deposits," which is also included in the "Real Property" chapter of the West Virginia

---

lessee has an option to purchase the interest and all or a substantial part of the rental or other payments previously made by him are applied to the purchase price." The issue in the present case does not involve leases in which the lessee had an option to purchase the "interest."

[10] "'Goods' includes goods not in existence at the time the transaction is entered into and gift and merchandise certificates, but excludes money, chattel paper, documents of title and instruments." W.Va. Code § 46A-1-102(21).

13

Code, provides the following *explicit* direction: "The provisions of this article shall apply to all residential rental premises or units used for dwelling purposes." W.Va. Code § 37-6A-6. Other statutory sections that *explicitly* apply to and regulate the landlord-tenant relationship include W.Va. Code §§ 55-3-1 *et seq.* [1923] (unlawful entry); W.Va. Code §§ 55-4-1 *et seq.* [1923] (concerning the procedure for ejectment of a tenant); W.Va. Code §§ 55-3A-1 *et seq.* [1983] (concerning remedies for wrongful occupation of residential property); and W.Va. Code §§ 37-15-1 *et seq.* [1993] (concerning "factory-built homes . . . which are held as personal property situated on real property owned by another in conjunction with a landlord/tenant relationship.").

Because the landlord-tenant relationship is so pervasively regulated in these numerous statutory sections outside of the CCPA, we are compelled to conclude that the legislature did not intend to further regulate the landlord-tenant relationship in an ambiguous provision of our CCPA. Instead, based on the foregoing statutory sections, it is clear that when the legislature intends to address the relationship between a landlord and tenant in a particular statute, it does so explicitly.

Further illustrating this point is the fact that the CCPA includes one explicit reference to "the rental of space to be occupied for residential purposes." West Virginia Code § 46A-6-109 [1981][11] provides that a written agreement a consumer enters into

---

[11] West Virginia Code § 46A-6-109(a) is as follows:

(Continued . . .)

14

must be written in plain language. This section explicitly includes written agreements concerning "the rental of space to be occupied for residential purposes." This inclusion of "rental space to be occupied for residential purposes" in one subsection of the CCPA demonstrates that when the legislature intends residential leases to be included into a particular section of the CCPA, it does so explicitly. Critically, the debt collection provisions at issue, as well as the CCPA's statement of general applicability contained in article 1, do not include any similar language covering "the rental of space to be occupied for residential purposes."

If the legislature intends for the CCPA to generally regulate fees a landlord may charge pursuant to a lease of residential property, it is free to do so by means of the full legislative process. However, this Court may not read into the CCPA that which it does not say.[12] "It is not for this Court arbitrarily to read into a statute that which it does

---

> (a) Every written agreement entered into by a consumer after the first day of April, one thousand nine hundred eighty-two, for the purchase or lease of goods or services in consumer transactions, whether for the rental of space to be occupied for residential purposes or for the sale of goods or services for personal, family, household or agricultural purposes, must: (1) Be written in a clear and coherent manner, using words with common and everyday meanings; (2) use type of an easily readable size and ink which adequately contrasts with the paper; and (3) be appropriately organized and captioned by its various sections to be easily understood.

[12] We agree with the Attorney General that the CCPA "is a remedial statute intended to protect consumers from unfair, illegal and deceptive business practices, and
(Continued . . .)

15

not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syllabus Point 11, *Brooke B. v. Ray*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

Moreover, a number of states outside of our jurisdiction have determined that their consumer credit protection statutes are not applicable to residential leases, concluding that such residential leases are within the purview of their specific landlord-tenant acts which *explicitly* regulate and apply to landlord-tenant relationships.[13] For instance, in finding that its consumer credit protection act did not regulate and apply to

---

must be liberally construed to accomplish that purpose." *Harper v. Jackson Hewitt, Inc.*, 227 W.Va. 142, 151, 706 S.E.2d 63, 72 (2010). However, we may not read into the statute that which it does not say—that the CCPA generally applies to and regulates residential leases of real property entered into by a landlord and tenant. Similarly, we find the Attorney General's reliance on *Fleet v. Webber Springs Owners Ass'n, Inc.*, 235 W.Va. 184, 772 S.E.2d 369 (2015), to be misplaced. In *Fleet* this Court determined that "[h]omeowners association assessments that are to be used for improving and/or maintaining common areas of a planned community. . . are an obligation primarily for personal, family, or household purposes, and, therefore, such assessments are 'claims' pursuant to W.Va. Code § 46A-2-122(b) (1996)." Syllabus Point 2, in part. The Court in *Fleet* only addressed homeowners association assessment fees, it did not address whether the debt collection provisions of the CCPA apply to landlord-tenant relationships. Further, unlike our landlord-tenant law, homeowners association assessment fees are not pervasively regulated in numerous statutory sections outside of the CCPA.

[13] *See Roberson v. Southwood Manor Associates, LLC*, 249 P.3d 1059 (Alaska 2011); *Childs v. Purll*, 882 A.2d 227, 237-39 (D.C. 2005); *Webb v. Theriot*, 704 So.2d 1211 (La. Ct. App. 3d Cir. 1997); *Carlie v. Morgan*, 922 P.2d 1 (Utah 1996); *Heritage Hills, Ltd. v. Deacon*, 551 N.E.2d 125 (Ohio 1990); *Chelsea Plaza Homes, Inc. v. Moore*, 601 P.2d 1100 (Kan. 1979).

16

residential leases of real property, the Supreme Court of Washington noted the harm that could occur if the court, rather than the legislature, were to extend the act to cover the landlord-tenant relationship:

> There is a marked difference between the judicial and legislative processes of inclusion and exclusion of activities under the Consumer Protection Act. In the legislative process, the people engaged in the activity sought to be specifically included within the act have the full opportunity to be heard and to have their particular problems considered at legislative hearings. Furthermore, the merits of any such proposed inclusion are subject to debate and amendment in legislative committees and on the floor of the respective houses of the Legislature.
>
> The judicial process, on the other hand, does not always provide equivalent opportunities. In the present case, for example, the State Attorney General's Office represents the interests of the public (and indirectly the rights of the individual tenants), whereas the landlord appearing pro se represents himself in a case which potentially affects every person in the state who rents out or ever will rent out one or more dwelling units.

*State v. Schwab*, 103 Wash. 2d 542, 547-48, 693 P.2d 108. 111 (1985).

We agree with this reasoning and analysis. In fact, in Syllabus Point 2 of *Huffman v. Goals Coal Co.*, 223 W.Va. 724, 679 S.E.2d 323 (2009), this Court held:

> This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*.

17

Therefore, we find that if our CCPA is extended to apply to the landlord-tenant relationship, it should be accomplished through the legislative process, which entails that all interested parties, including *all* landlords and tenants who wish to be heard, be given the right to have their concerns addressed and considered.

Finally, in construing the debt collection provisions, we are mindful that the overall purpose of the CCPA, as articulated by Professor Cardi, supports the conclusion that the Act was not intended to apply to residential leases of real property. As noted, the CCPA has been in effect since 1974 and this Court has not considered a single case during the intervening forty-three years in which a party has claimed that fees charged pursuant to a lease of residential real property violated the CCPA.

Based on the foregoing, we conclude that the debt collection provisions contained in article 2 of the CCPA, W.Va. Code §§ 46A-2-122 to -129a, do not apply to and regulate the fees a landlord may charge a tenant pursuant to a lease of residential real property.

### B. Unfair or Deceptive Acts or Practices Provisions

We now address the unfair or deceptive acts or practices provisions ("deceptive practices provisions") contained in article 6 of the CCPA, W.Va. Code §§ 46A-6-101 to -106. Relevant to our inquiry, W.Va. Code § 46A-6-104 provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." As with the debt collection provisions contained in article 2, article 6 contains a set of definitions specifically applicable to the

18

deceptive practices provisions. West Virginia Code § 46A-6-102(6) sets forth the following definition: "'Trade' or 'commerce' means the advertising, offering for sale, sale or distribution *of any goods or services* and shall include any trade or commerce, directly or indirectly, affecting the people of this state." (Emphasis added). The key inquiry is whether a residential lease of real property made between a landlord and tenant can be characterized as a "good or service" under the definition contained in W.Va. Code § 46A-6-102(6).

While article 6 does not contain specific definitions of "goods" or "services," those terms are defined in article 1 in the CCPA's general definitions section. "'Goods' includes goods not in existence at the time the transaction is entered into and gift and merchandise certificates, but excludes money, chattel paper, documents of title and instruments." W.Va. Code § 46A-1-102(21). "'Services' includes: (a) Work, labor and other personal services; (b) privileges with respect to transportation, use of vehicles, hotel and restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like; and (c) insurance." W.Va. Code § 46A-1-102(47).

The Attorney General argues that a residential lease of real property is a package of "goods or services" and that it therefore is included in the deceptive practices provisions of the CCPA. In support of this argument, the Attorney General cites this Court's ruling in *Teller v. McCoy*, 162 W.Va. 367, 253 S.E.2d 114 (1978), arguing that the Court concluded that a residential lease is a contract for a bundle of goods and

19

services.  By contrast, Defendant Landlord asserts that the legislature chose to define "trade" and "commerce" narrowly and that it limited application of the deceptive practices provisions to transactions involving goods and services.  Defendant Landlord further argues that had the legislature intended to include residential leases in the deceptive practices provisions of the CCPA, it would have done so explicitly.

This Court has previously construed the deceptive practices provisions contained in the CCPA.  In *State ex rel. McGraw v. Bear, Stearns & Co., Inc.*, 217 W.Va. 573, 576-77, 618 S.E.2d 582, 585-86 (2005), this Court noted:

> We are guided herein by our previous recognition that W.Va. Code § 46A-6-104 is among the most ambiguous provisions of the consumer protection act. *See McFoy v. Amerigas, Inc.*, 170 W.Va. 526, 529, 295 S.E.2d 16, 19 (1982) (stating that "Code, 46A-6-104 [1974] is among the most broadly drawn provisions contained in the Consumer Credit and Protection Act and it is also among the most ambiguous").

Having previously determined that W.Va. Code § 46A-6-104 is ambiguous, we again recognize that "[a] statute that is ambiguous must be construed before it can be applied." *Farley*, Syllabus Point 1.  As with our analysis of the debt collection provisions of the CCPA, we find that an examination of the Act as a whole reveals that the deceptive practices provisions do not apply to and regulate residential leases of real property entered into by a landlord and tenant.

In concluding that the deceptive practices provisions do not apply to and regulate residential leases of real property, we are guided by five main points, many of which are similar to our debt collection analysis in the previous section.  While we need

20

not repeat that analysis at length, the reasons underlying our conclusion are as follows. First, W.Va. Code §§ 46A-6-101 to -106 does not include any *explicit* direction stating that the deceptive practices provisions apply to the landlord-tenant relationship. Second, it is clear that when the legislature intends for a particular statute to apply to the landlord-tenant relationship, it does so explicitly. *See* W.Va. Code §§ 37-6-1 to -30; W.Va. Code §§ 37-6A-1 to -6, W.Va. Code §§ 55-3-1 *et seq.*; W.Va. Code §§ 55-4-1 *et seq.*; W.Va. Code §§ 55-3A-1 *et seq.*; and W.Va. Code §§ 37-15-1 *et seq.* Third, the origin, history, and purposes of the CCPA, previously discussed, indicate that it was not intended to generally apply to and regulate residential leases of real property entered into by a landlord and tenant. Indeed, in the forty-three years since the CCPA was enacted, there have been no cases before this Court in which a party has asserted that the deceptive practices provisions regulate and apply to residential leases of real property. Next, we find that the legislature may amend the deceptive practices provisions and decide to explicitly include residential leases in this section. However, it is not for this Court to arbitrarily read into the deceptive practices provisions that which it does not say.

Finally, we find that the Attorney General's reliance on our ruling in *Teller* is misplaced. In *Teller*, the Court found that a residential lease is a contract and that, as a matter of contract law, there is an implied warranty of habitability in residential leases. To that end, the Court held in Syllabus Point 1 of *Teller* that "[t]here is, in a written or oral lease of residential premises, an implied warranty that the landlord shall at the commencement of a tenancy deliver the dwelling unit and surrounding premises in a fit

21

and habitable condition and shall thereafter maintain the leased property in such condition." The implied warranty of habitability is set forth by statute in the "Landlord and Tenant" section of our law concerning "Real Property." *See* W.Va. Code § 37-6-30. The Court in *Teller* made clear that a residential lease is "both a conveyance and a contract." 162 W.Va. at 383, 253 S.E.2d at 124. The Court did not hold that a residential lease was a "good" or a "service." In fact, the Court noted that in implying a warranty of habitability into a residential lease, "[w]e intend in no way to change statutory, common law, or case law definitions of 'real property,' nor are we today altering the law on recordation, descent, conveyancing, creditors' rights, etc." 162 W.Va. at 384 n.13, 253 S.E.2d at 125 n.13.

Based on the foregoing, we conclude that the deceptive practices provisions contained in article 6 of the CCPA, W.Va. Code §§ 46A-6-101 to -106, do not apply to and regulate the fees a landlord may charge a tenant pursuant to a lease of residential real property.

### C. Certified Question Answered

Finally, we return to the certified question: "Does the West Virginia Consumer Credit and Protection Act (including W.Va. Code §§ 46A-2-122 to -129a and §§ 46A-6-101 to -106) apply to the relationship between a landlord and tenant under a lease for residential rental property?" Based on all of the foregoing, we answer this question in the negative and conclude that the CCPA does not apply to the relationship between a landlord and tenant under a lease for residential real property. We therefore

22

hold that the debt collection provisions, W.Va. Code §§ 46A-2-122 to -129a, and deceptive practices provisions, W.Va. Code §§ 46A-6-101 to -106, both contained in the West Virginia Consumer Credit and Protection Act, do not apply to and regulate the fees a landlord may charge to a tenant pursuant to a lease of residential real property.[14]

## IV. CONCLUSION

We answer the certified question in the negative.

Certified Question Answered.

---

[14] Our answer to the certified question includes the following caveat—the CCPA does not generally apply to the relationship between a landlord and tenant under a lease for residential real property. However, according to the explicit language contained in W.Va. Code § 46A-6-109(a), written lease agreements "for the rental of space to be occupied for residential purposes," are required to be written according to the plain language requirements of that statute.